Rockingham,
No. 4389.

RALPH A. MACE & a. v. NOEL W. SALOMON & a.

Argued December 30, 1954.

Decided January 28, 1955.

*Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the plaintiffs.

*Perkins & Holland* (*Mr. Perkins* orally), for the defendants.

LAMPRON, J.   This controversy arose from the use of a school district check-list for the voting on certain matters at the meeting in question.   Plaintiffs allege that certain legal voters of the town of Hampton whose names were listed on the check-list of the town but did not appear on that of the school district were therefore refused the right to vote at the meeting.   It is further alleged that they were in sufficient number so that if they had voted against the bond issue it would have failed to receive the necessary two-thirds vote required for its passage (Laws 1953, *c.* 258, *s.* 8)

with a different result to the meeting. *Leonard* v. *School District*, 98 N. H. 296, 297.

Plaintiffs' contentions are that the action taken at the meeting was illegal and void because a school district check-list had not been properly adopted; the list used had not been properly posted, corrected and certified prior to the previous annual meeting, nor posted, corrected or certified prior to the special meeting.

It is agreed that at the annual meeting held March 4, 1949, article 10 of the warrant "To see if the school district will vote to adopt the non-partisan ballot system for all future meetings, regular or special" was adopted. This was an adoption by the district (Laws 1943, *c.* 22, *s.* 5) of the non-partisan ballot system as provided in R. L., *c.* 34, *ss.* 112 to 120, as added by said chapter 22 of Laws 1943. Section 119 thereof provides that when this system is adopted "the check-list shall be used at all elections of town [school district] officers." As such it was a vote "that a check-list be used at future meetings" within the meaning of R. L., *c.* 139, *s.* 11, requiring a school district check-list to be made up and used at annual meetings "at the election of officers and otherwise." Since such a check-list was used "at the last preceding regular meeting" of the Hampton school district (R. L., *c.* 139, *s.* 3) it was properly used at the special meeting pursuant to a vote at that meeting so to do, of well over ten legal voters of the district. *Ib.*

We do not agree with the plaintiffs' contention that the vote adopting article 10 of the warrant at the meeting of March 4, 1949, did not comply with the requirements of Laws 1943, *c.* 22, *s.* 5, *supra,* because there was no vote "to elect its school district officers by an official ballot." A fair interpretation of that article in the warrant and the vote thereon is that the meeting was voting to elect the school district officers by ballot which would necessarily be an official ballot (R. L., *c.* 34, *ss.* 117, 118) and by the non-partisan ballot system under which a check-list shall be used (*s.* 119). Any other interpretation would have the effect of defeating the apparent intention of the voters. *New London* v. *Davis*, 73 N. H. 72, 76; *Amey* v. *School District*, 95 N. H. 386, 388. Having thus voted "that a check-list be used at future meetings" (R. L., *c.* 139, *s.* 11, *supra*) it was incumbent on the school board to "make, post and correct a list of the legal voters in the district, as supervisors are required to do in regard to the list of voters in their towns." *Ib.*

Supervisors of the town check-list are required by R. L., *c.* 32, *s.*

5 (as amended by Laws 1943, c. 81) to "make and post, at two or more of the most public places in town, a complete alphabetical list of all legal voters in the town thirty days before the day of the biennial and annual elections and of any other election at which such list is to be used." Section 6 thereof requires supervisors in towns such as Hampton "to be in session for the correction of the check-list . . . two days at least before the day of the election one of which shall be the day next preceding that of election . . . the first session shall be upon the Tuesday next preceding the day of election." These are the same requirements imposed upon the school board by R. L., c. 139, s. 11, *supra*.

All of the above provisions apply to elections only. There are no statutory provisions which require the supervisors of the town check-list or the school board to make, post and correct the check-list before a special meeting such as this one which did not involve an election. The decree of the Court authorizing the "meeting . . . for the purpose of acting upon the . . . warrant . . . in such manner as if the meeting were an annual district meeting" (Laws 1953, c. 258, s. 8) did not add to the statutory requirements.

R. L., c. 139, s. 3, as amended by Laws 1947, c. 178, provides that if a check-list was used at the last preceding regular meeting (as it was here) "the same shall be used to ascertain the number of legal voters in said district; and such check-list, corrected according to law, may be used at such special meeting upon request of ten legal voters of the district" (which was made). There being no law providing for the correction of the check-list, except R. L., c. 32, ss. 5, 6, *supra*, which, applies to an election only, the check-list used at the previous annual meeting required no further correction and was properly used at the special meeting.

We consider next whether the check-list was properly corrected before the annual meeting preceding this special meeting. R. L., c. 32, s. 6, *supra*, requires, as previously noted, that in towns such as Hampton there be sessions for the correction of the check-list two days at least before the day of election, one on the day next preceding that of election, the first upon the Tuesday next preceding the day of election. In this instance the latter date would have been March 2, 1954. The first session was held February 26. These requirements are coordinated with the days of election. Most elections are held on a Tuesday. R. L., c. 36, s. 1; c. 37, ss. 1, 6; c. 38, s. 1; c. 39, s. 1; c. 40, s. 1; c. 57, s. 1. This places the first session seven days before that of election. The first session

here was held seven days before the day of the annual school district meeting. The voters were therefore offered an opportunity similar to that required by the statute in most cases. The statutory purpose was thus substantially complied with.

Only one of the six check-lists posted stated the place where the sessions for correction were to be held. It is agreed they have always been held in the Hampton town offices. The check-lists were certified by only two members of the school board instead of by all three. R. L., c. 32, s. 13, as amended by Laws 1943, c. 81, s. 4. These incidents did not constitute such deviations from the statutory requirements as to invalidate any action taken at the special meeting based on the use of these check-lists in determining the eligibility of voters. See *Brooks* v. *School District*, 73 N. H. 263, 265; *Laconia* v. *Belknap*, 86 N. H. 565, 566.

We are therefore of the opinion that check-lists were properly used to determine the eligibility of voters at the special meeting of November 26, 1954; that there is no law requiring their correction before such a meeting at which no election was held; that certain irregularities in the correction of the check-lists before the previous annual meeting were not of such a character as to make their use improper.

*Bill dismissed.*

All concurred.