Grafton,
No. 4944.

Sugar Hill Improvement Association & a.

*v.*

Lisbon & a.

Argued February 6, 1962.

Decided March 6, 1962.

*Harold E. Wescott* and *Peter V. Millham* (*Mr. Wescott* orally), for the plaintiffs.

*Nighswander, Lord & Bownes* (*Mr. Hugh H. Bownes* orally), for the defendant town of Lisbon.

*Frederick J. Harrington* (by brief and orally), for the defendant Lisbon village district.

BLANDIN, J.   At the outset it may be noted the court well knows that the problems of towns such as Lisbon, which contain at least two centers of population, widely separated geographically as well as by seemingly conflicting economic and other interests, are troublesome ones.   A separate portion of a town may at times have substantial grounds for taking a position adverse to what appears to be the welfare of another.   However, our task is strictly limited to the question of the legality and effect of the vote taken at the special meeting of the Lisbon village district on June 9, 1960.

In this connection, we believe that the suggestion of counsel for the town that the matter is moot must be rejected.   In *Hood & Sons* v. *Boucher*, 98 N. H. 399, we held that the issue of whether a case was moot was not subject to rigid rules, but was "one of convenience and discretion."   *Id.*, 401.   In the present case in view of action taken after the meeting of June 1960, we believe justice requires that the matter be decided so that the town and its officials may know where they stand.

The plaintiffs' attack on the Trial Court's order dismissing the petition centers on the proposition that the vote taken at the special meeting on June 9, 1960, did not dissolve the Lisbon village district because two-thirds of its legal voters did not vote to dissolve or "terminate" to use the statutory phraseology.

The law under which the meeting purported to act reads as follows:   "Any such district, and any district now in existence having the rights and powers of a village district, may, by a two-thirds vote of its legal voters, terminate its existence and dispose of its corporate property."   RSA 52:21.

Section 21 originated in G. L., c. 107, s. 8, which provided for dissolution by "a two-thirds vote of the legal voters in said district . . . . "   In P. S., c. 53, s. 15, the wording was changed to its present form.

The question whether by RSA 52:21 the Legislature intended

that two-thirds of all the voters in the district must approve its termination or that a vote of two-thirds of those present and actually voting should be sufficient, is by no means free from difficulty. However, the long-established, widely-accepted rule that a majority of the legal voters or any given proportion of such refers to those actually voting, received unanimous approval in *Laconia Water Company* v. *Laconia,* 99 N. H. 409 (1955). In that case, all the persuasive arguments that by failure to insert the words "present and voting" the Legislature showed that it did not intend this rule to apply, were met and rejected as they have been from an early date. *Ib.,* 411.

The opinion further pointed out that when the legislative intent is that a majority or a certain proportion of all of the qualified voters must cast their ballots to make a vote binding, this intent is expressed in positive, unequivocal language. *Laconia Water Company* v. *Laconia, supra,* 412. *Cf.* RSA 31:5; RSA 52:4; RSA 197:3; RSA 482:48.

In brief, we agree with the Trial Court that since RSA 52:21 does not "very clearly" express an intention that a vote of two-thirds of all the qualified voters in the district is a requisite for legal termination, the rule in the *Laconia* case should apply here. The plaintiffs' contention that this is not so and that a two-thirds vote of all qualified voters in the district is necessary, is rejected.

In relation to the legality of the vote, the plaintiffs, while not questioning the sufficiency of the notice requiring registration, raise the objection that no check list had been used before for a district vote and that the present one which was put into effect for the special June meeting was improperly prepared and hence was not a legal list. *Cf. Mace* v. *Salomon,* 99 N. H. 370. So far as the fact that no check list had been used before is concerned, it is immaterial. The use of such was expressly authorized but not required by Laws 1903, *c.* 224, *s.* 13 under which the district was organized.

The basis of the plaintiffs' objection appears to be that the vote at the regular meeting on March 24, 1960, authorizing the preparation and use of the list, directed the commissioners that "if possible, such list shall be established . . . by the personal registration of those precinct voters eligible to vote." This they say was illegal since personal attendance is not a requisite and the effect was to deprive many voters of the district of their right to vote. They also claim that the Court improperly inferred that since a majority

of the fifty-eight voters present voted for the motion establishing a check list, this could be considered as a petition of ten or more voters under RSA 52:15. They furthermore point out that only 187 persons registered out of approximately 500 eligible to do so.

The Court found that the check list was not a legal one as it had not been correct and used at a prior meeting (*Mace* v. *Salomon,* 99 N. H. 370), but that "no one was denied the right to vote." It further concluded that "it is not found that any different result would have been arrived at if a different check list or no check list had been used." It therefore dismissed the plaintiffs' claims on this score.

There is no evidence in the case that anyone was refused the right to register or to vote at the special meeting. The comparatively small number of persons who took the trouble to register and vote, did not as a matter of law force the Court to conclude that any impropriety or irregularity in the preparation of the check list or in any other matters influenced the result of the meeting. It has been a matter of common knowledge that a small turnout occurs all too often where propositions such as involved here are concerned. *Laconia Water Company* v. *Laconia,* 99 N. H. 409, 412.

The burden was on the plaintiffs to show such fraud or irregularities in the proceedings, including improper preparation or use of the check list, as left the intent of the voters in doubt or affected the result of the special meeting. *Leonard* v. *School District,* 98 N. H. 296, 297.

The Court's findings and rulings that the plaintiffs failed to sustain this burden are upheld and the exceptions to them overruled.

The plaintiffs also argue that there is no evidence to support the Court's finding that the real intent of the voters was to terminate the existence of the Lisbon village district and form a new district. They claim, rather, that there was only an ineffectual attempt to dissolve the district in part and that this cannot be done under RSA 52:21. They further urge that no new district was formed. It is true that the language of the several articles in the warrants for the annual meeting of March 24, 1960, the special meeting of June 9 following, and also the votes at the latter meeting, seem somewhat confusing and contradictory. However, the report of a committee of three, appointed in December, 1959, to examine the situation, "to study the feasibility of dissolving the Village District" and offer recommendations, which were made on March 23, 1960, is revealing. In its report, the committee states

that three courses are open "to the precinct voters." The final one is "To dissolve the precinct." In this connection, they say flatly in their recommendation that "a vote may be taken to dissolve . . . ."

The record of the March 24 regular meeting of the district shows that on motion under Article 15, it was voted, to authorize the committee "to study the possible dissolution of the District" and to bring before the voters "the question of the dissolution of the District."

The impression that only a partial dissolution was intended and the resulting confusion could be found to have arisen because the water department division of the district was making money and the voters wished to continue this profitable department. Thus, at the special meeting in June at which 154 voted for dissolution and only 3 opposed, Article 1 speaks of the dissolution of the "Lisbon Village District, except for the Water Department." Article 2, which was unanimously approved, provided that all the assets of every nature of the Lisbon village district be turned over to, or retained by, the water district division "under such name as the voters may select under article 3 . . . . " Under article 3 it was again unanimously voted that the "remaining water district be established as the Lisbon village water district and that the selectmen . . . be petitioned to change the boundaries of the Lisbon village water district as follows:" Thereafter appears a detailed description of the boundaries of this district.

At the conclusion of the special meeting, upon motion a rising vote of thanks was given to the committee "for their efforts and study made of the dissolution of the district."

It was the duty of the Court from the conflicting evidence before it, documentary and otherwise, to determine what the voters had really done. Upon the entire record we believe it could be found that the original intent was to terminate the existence of the Lisbon village district and that this intent remained constant throughout the proceedings. The fact that in the course of the study of the situation it became obvious that a profitable division, consisting of a water department district, should be retained in a new district, and that this was done, did not as a matter of law compel a finding that the original purpose of the voters had changed. The statute provides that the dissolving district may vote to dispose of its corporate assets, upon termination of its existence. RSA 52:21, *supra*.

If the basic wishes of the electorate can fairly be found, the

court should be loath to thwart them because of technical errors in district meeting proceedings (*Lamb* v. *Danville School Board,* 102 N. H. 569, 571) or because precise legal phraseology is not used.

Upon all the evidence, we cannot say the Trial Court's conclusion that the result of the special meeting of June 9, 1960, was to terminate the existence of the Lisbon village district, was clearly unreasonable. It follows that the plaintiffs' exception to it is overruled. *Romano* v. *Company,* 95 N. H. 404.

Finally, it remains to be decided whether the Court correctly ruled that the vote on article 3 might be considered as a petition by ten or more voters under RSA 52:1 to form a new district. Section 1, so far as material, provides that: "Upon petition of ten or more legal voters . . . the selectmen . . . shall fix, by suitable boundaries, a district including such parts of the town or towns as may seem to them convenient, for any or all of the following purposes: [including] . . . the supply of water for domestic and fire purposes . . . . "

In all the circumstances we think the unanimous vote in favor of article 3 that "the selectmen . . . be petitioned to change the boundaries of the Lisbon village water district as follows:" and the ensuing detailed description of such boundaries, may fairly be construed in accordance with the Court's ruling.

The order is

*Petition dismissed.*

All concurred.