Rockingham
No. 6707

FRANCINE H. BYRON & *a.*

v.

TIMBERLANE REGIONAL SCHOOL DISTRICT & *a.*

August 27, 1973

*Shaines, Madrigan & McEachern (Mr. John H. McEachern* orally) for the plaintiffs.

*Soule & Leslie (Mr. Lewis F. Soule)* orally for the defendants.

LAMPRON, J. Petition for a declaratory judgment (RSA 491:22) as to the validity of a bond issue voted on April 7, 1973, at the reconvened recessed annual school district meeting of March 31, 1973. Plaintiffs are residents and taxpayers of the Timberlane Regional School District. The parties have filed an agreed statement of facts. The sole question of the validity of the vote authorizing the bond issue was reserved and transferred to this court without ruling by *Perkins,* J. The matter was heard on July 18, 1973.

The annual meeting of this cooperative school district (RSA ch. 195) was held on Saturday, March 31, 1973, in the Timberlane Regional High School. On March 8, 1973, the school board had held a public hearing on the proposed bond issue. RSA 33:8-a (Supp. 1972)). A warrant for the annual meeting had been drafted and duly posted in accordance with the requirements of RSA 197:5, 7 (Supp. 1972). Among the ten items listed in the warrant to be acted upon at the meeting were the following:

"2. To see if the District will vote to construct and originally equip a school building and an addition to the Timberlane Regional High School, and authorize the School Board to borrow money in the amount of One Million Eight Hundred and Ten Thousand Dollars ($1,810,000) to pay for the

project, and to apply toward the cost of the project all grants and interest received, or take any other action relative thereto."

"7. To see if the District will authorize the School Board to establish a capital reserve fund in accordance with New Hampshire RSA: chap. 35, for the purpose of future capital improvement and to raise and appropriate One Hundred Fifty Thousand Dollars ($150,000) for deposit therein."

The annual school district meeting of March 31, 1973, convened at 9:55 a.m. The ballot clerks and supervisor of the checklists were sworn in and voting for the officers for the coming year took place from 10 a.m. to 6 p.m. Meanwhile the meeting was in recess until it reconvened at 7:05 p.m. A brief discussion then took place on article 2 of the warrant, the bond issue in question, and the polls were open from 7:45 p.m. to 10 p.m. to receive votes thereon. It is to be noted that the business of the annual meeting on this day and at the reconvened meeting on April 6 and 7, 1973, was transacted in the school gymnasium except for the balloting which took place in the school cafeteria. While voting on article 2 was taking place in the cafeteria, many of the other articles in the warrant were adopted at the meeting in the gymnasium, which then recessed.

The meeting was reconvened at 11:25 p.m. and the result of the vote on article 2 was reported as follows: Total votes cast 1805, disqualified 3, total votes 1802 consisting of "Yes" votes 1189, "No" votes 615. Article 2 was declared defeated as it did not constitute a "vote of two-thirds . . . of all the voters present and voting" required to authorize a bond issue. RSA 33:8; *Gordon v. Lance,* 403 U.S. 1, 29 L. Ed. 2d 273, 91 S. Ct. 1889 (1971); *Tiews v. School Dist.,* 111 N.H. 14, 273 A.2d 680 (1971). A motion to reconsider was then made. If adopted it would have immediately placed article 2 before the meeting "in the exact position it occupied the moment before it was voted on originally." Robert, Rules of Order § 36, at 274 (rev. ed. 1970). However, the motion was amended to provide to meet for reconsideration on April 6, 1973, at 7 p.m., and was adopted by a majority voice vote. The meeting then adjourned at 11:55 p.m.

During the interval between Saturday March 31 and Friday April 6, the Plaistow News, a weekly newspaper serving the area, carried several items and a purported legal notice concerning the reconsideration of the vote on article 2, which was to take place on April 6, 1973, at 7 p.m. at the high school. This is also true of the issues of April 2 to April 6 of the Haverhill Gazette which serves the area towns. In addition thereto, the matter was discussed on an area radio station.

On April 6, 1973, at 7 p.m. the recessed annual school district meeting of March 31 was reconvened and the matter of voting on article 2 was placed before the meeting. Although an amendment to RSA 33:8-a (Supp. 1972) by Laws 1973, ch. 25, effective March 9, 1973, required that the polls be opened "for a period of not less than one hour following the completion of discussion", the polls were actually kept open from 7:15 p.m. to 9:30 p.m. The meeting which had recessed was reconvened at 9:50 p.m. and the result of the vote on article 2 was announced. The votes cast were 2578, disqualified 5, total votes 2573, "Yes" votes 1621, "No" votes 953. Not having received the two-thirds vote required (RSA 33:8) the article was declared defeated.

A motion was then made to consider article 7 of the warrant pertaining to the establishment of a capital reserve fund in the amount of $150,000. It was adopted by a secret ballot vote of 388 to 299 which took place between 10:30 p.m. and 10:55 p.m. After further discussion and a defeated motion to adjourn, the following motion was made and seconded: "Based on new information, which is that the Capital Reserve Fund will increase the taxes more than Article 2, I move that we reconsider Article 2." A motion to table was defeated and the motion to reconsider article 2 was adopted by a majority vote. The meeting was recessed at 11:50 p.m. to allow preparations to be made for the vote. The polls were opened at 12:05 a.m., April 7, and remained open until 2:05 a.m. The resulting vote was as follows: Total votes cast 969, invalid 1, total votes 968, "Yes" votes 705, "No" votes 263. The required two-thirds vote having been obtained article 2 was declared adopted. The vote on article 7 was reconsidered and the capital reserve

fund was reduced to $100. The meeting adjourned at 2:45 a.m. on April 7, 1973.

The plaintiffs first contend that the voting which took place on Saturday, April 7, 1973, between 12:05 a.m. and 2:05 a.m. and resulted in a "two-thirds vote in favor of the bond issue proposed in Article 2 of the warrant did not comply with the provisions of RSA 33:8 and is invalid." The pertinent parts of that section read as follows: "Except as otherwise specifically provided by law, the issue of bonds . . . by any municipal corporation, except a city, shall be authorized by vote of two-thirds . . . of all the voters present and voting at an annual or special meeting of such corporation, called for the purpose . . . ." Plaintiffs point out that 969 voters only participated in the vote which adopted article 2 while 1802 voters were present and voted when the article was defeated at the March 31 meeting and 2578 voters took part in the voting on April 6 after the first motion for reconsideration when article 2 was again defeated. They contend that a proper interpretation of RSA 33:8 in the light of its purpose and language requires a "Yes" vote of two-thirds of 2578 votes which is the number of "all the voters present and voting at the meeting" called for the purpose of voting on article 2.

It is true that a greater number of the electorate of the district expressed its wishes on the two previous votes and that these wishes should be respected if it is legally permissible to do so. *Sugar Hill Improvement Ass'n v. Lisbon,* 104 N.H. 40, 45-46, 178 A.2d 512, 516 (1962). However, it is well established that unless otherwise provided by law, "all public bodies have a right during the session to reconsider action taken by them as they think proper and it is the final result only that is to be regarded as the thing done." P. Mason, Manual of Legislative Procedure § 450 (1970). For the purposes of these proceedings the votes of March 31, April 6, and April 7 were taken "during the session". *See* RSA 33:8-a I, *as amended,* Laws 1973, ch. 25. "The purpose of reconsidering a vote is to permit correction of hasty, ill-advised, or erroneous action, or to take into account added information or a changed situation that has developed since the taking of the vote." Robert, Rules of Order § 36, at 265 (rev. ed. 1970). After

article 7 providing for a capital reserve fund was adopted following the two adverse votes on article 2, it was stated that "new information" revealed that the reserve fund would increase the taxes more than the bond issue provided for in article 2.

We find nothing in RSA ch. 33 or in its amendments by Laws 1971, ch. 270 or Laws 1973, ch. 25 which manifests a legislative intent to prohibit the adoption of a bond issue on a motion to reconsider. *See Lamb v. Danville School Board,* 102 N.H. 569, 162 A.2d 614 (1960). On the contrary, in 1973 House bill 485, now Laws 1973, ch. 543, (effective August 31, 1973) the legislature recognized the fact that bond issues may be adopted on motions for reconsideration. We hold that the vote of April 7, 1973, was validly taken and that the number of affirmative votes cast met the requirements of RSA 33:8 that a bond issue must be authorized by a vote of two-thirds of all the voters present and voting at an annual meeting called for that purpose. *See Laconia Water Co. v. Laconia,* 99 N.H. 409, 112 A.2d 58 (1955); *Sugar Hill Improvement Ass'n v. Lisbon,* 104 N.H. 40, 178 A.2d 512 (1962).

The plaintiffs also argue that the vote adopting article 2 taken in the early hours of April 7 violated the purpose and terms of RSA 33:8-a II as inserted by Laws 1973, ch. 25 which became effective March 7, 1973. This section reads as follows: "All articles appearing in the warrant which proposes a bond issue ... exceeding one hundred thousand dollars shall appear in consecutive numerical order and shall be acted upon prior to other business except the election of officers and zoning matters or as otherwise determined by the voters at the meeting. Polls shall remain open and votes shall be accepted by the moderator on each such article, for a period of not less than one hour following the completion of discussion on each respective article. A separate ballot box shall be provided for each bond article to be voted upon pursuant to this section." This clearly expressed intent of the legislature is designed to keep the discussion and vote on each article pertaining to a bond issue separate from any other such article on the warrant. As there was only one bond issue in this warrant, the use of the same ballot box for the

votes taken thereon on March 31, April 6, and April 7 was proper.

This same section is also intended to have bond issue articles presented to the voters early in the meeting. Article 2 was so presented. However there is nothing in the section which can be interpreted as intended to prevent the usual parliamentary procedures to prevail in the meetings. Motion to reconsider "enables a majority in an assembly, within a limited time and without notice, to bring back for further consideration a motion which has already been voted on." Robert, Rules of Order § 36, at 265 (rev. ed. 1970). Such a motion has a high priority in parliamentary procedure. *Id.* at 267. Since the meeting of April 6 which ended on April 7 was a continuation of the annual meeting of March 31, a motion to reconsider could properly be made at any time before final adjournment of the reconvened meeting. *Id.* § 9, at 79-80, § 36, at 266. The moderator properly accepted the motions to reconsider and the votes on article 2 which followed, including the vote of April 7, 1973, approving the bond issue of $1,810,000 were properly taken and valid.

Finally the plaintiffs complain that the voters of the district were insufficiently warned with regard to the vote on article 2 which took place on April 7 after a second motion to reconsider had been adopted. They point to RSA 197:5 (Supp. 1972) which requires that the voters be warned by the school board by a warrant "stating the time and place of meeting and the subject matter of the business to be acted upon." There is no question that all the requirements as to warning and posting for the annual meeting of March 31 were complied with. Nor do plaintiffs contend that the voters of the district were not sufficiently warned as to the time, place and purpose of the vote on article 2 to be taken on April 6 after the first motion to reconsider. They argue, however, that this was not true as to the vote taken on April 7 when the bond issue was adopted.

Plaintiffs contend that some voters were lulled by some school district officers into believing that the vote taken on April 6 between 7:15 p.m. and 9:30 p.m., as a result of the first motion for reconsideration was adopted on March 31,

was to be the final vote on article 2. No allegation of fraud on the part of these officials has been made nor could fraud be found on the record. *See Leonard v. School District,* 98 N.H. 296, 99 A.2d 415 (1953). Plaintiffs do allege, and it is agreed, that ten voters, and "there may have been more", were told by election officials that there would be no additional reconsideration and left after voting April 6. The record shows, however, that the vote adopting article 2, which was taken on April 7 after a second motion for reconsideration, prevailed by over 60 votes.

There was no requirement until the adoption of 1973 House bill 485, now Laws 1973, ch. 543, which will become effective August 31, 1973, that notice of the time and place where reconsideration was to take place should be given. It is generally known that at a school district meeting, or other similar meetings, the action is not concluded nor the final results known until final adjournment takes place. We hold that the warning and posting which was duly made for the annual meeting of March 31 effectively gave notice to the voters of any business to be transacted in the recessed or adjourned annual meeting until its final adjournment. There being no proof of fraud or of irregularities on the part of the election officials of such a nature as to affect the result of the vote by which article 2 was adopted on April 7, 1973, we hold that vote legal and valid. *Leonard v. School District,* 98 N.H. 296, 99 A.2d 415 (1953); *Sugar Hill Improvement Ass'n v. Lisbon,* 104 N.H. 40, 44, 178 A.2d 512, 515 (1962).

Under RSA 32:5, the budget committee was required to hold a public hearing on the school district budget and give a notice thereof at least seven days in advance. The hearing was scheduled for March 8, 1973, at 7:30 p.m. and notice given. Under RSA 33:8-a (Supp. 1972), the school board was required to hold a public hearing on the proposed bond issue (article 2) and give at least a seven-day notice thereof. This hearing was scheduled for March 8, 1973, at 8:30 p.m. at the same meeting place as the budget committee hearing and notice given. Because of a lack of a quorum of the budget committee, the school board started its hearing at 7:50 p.m. and recessed during which the budget committee held its

hearing and the school board then reconvened. It is agreed that no additional people entered the hearing room between 7:30 and 8:30 and that there was no objection to the proceeding as held. We hold that the manner in which the hearings were held did not affect their legality and that they were both valid. *See Mace v. Salomon*, 99 N.H. 370, 111 A.2d 528 (1955); *Hardiman v. Dover*, 111 N.H. 377, 284 A.2d 905 (1971).

We hold that article 2 of the Timberlane Regional School District authorizing the issuance of bonds in the amount of $1,810,000 was validly adopted by the district and that any bonds issued pursuant thereto would be legal obligations of the district.

*Remanded.*

GRIMES, J., did not sit; the others concurred.