Rockingham
No. 7301

Thomas E. McDonnell & a.

v.

Town of Derry & a.

January 21, 1976

*Sheehan, Phinney, Bass & Green* and *James E. Higgins* and *E. Tupper Kinder (Mr. Higgins* orally) for the plaintiffs.

*Soule & Leslie (Mr. Lewis F. Soule* orally) for the defendants.

Duncan, J. The plaintiffs as taxpayers and voters, in the town of Derry, seek declaratory and injunctive relief against the town (RSA 491:22) and its selectmen as the result of certain votes taken at the 1975 annual town meeting. All questions of law raised by the petition were reserved and transferred without ruling by *Douglas,* J., upon an agreed statement of facts.

Prior to the 1975 Derry annual town meeting which was subject to RSA 39:2-a (Supp. 1975), the plaintiffs seasonably presented to the selectmen a petition to insert in the warrant (RSA 39:3 (Supp. 1975)) the following articles: *(Article 10)* "Do you favor a ceiling of $15,000 per annum on each and every town official's salary?"; *(Article 12)* "To see if the Town Meeting will vote to require that all

Derry Town Departments, Officers and Commissions shall operate within limits of line item budgets, precisely as voted at the appropriate town or public meetings; and, further, that there shall be no deviation from these line item budgets, except for good cause, and only after approval by the Town Budget Committee, following an advertised public hearing, or take any other action thereon."

Each of the aforementioned articles was placed on the "official ballot" for consideration by the voters on March 4, 1975. *See* RSA 39:2-a (Supp. 1975). The vote in favor of Article 10 was YES, 1,494; NO, 1,369. The vote in favor of Article 12 was YES, 2,380; NO, 579.

Thereafter, on March 15, 1975, at the second session of the town meeting, the so-called "deliberative" session, Article 20 was adopted. This article read as follows:

> "To vote to raise and appropriate such sums of money as may be necessary for the maintenance of the poor, for laying out and repairing highways, including Town Road Aid Plan apportionment A and Town Road Aid Plan apportionment B, for building and repairing bridges, for police department, for the Derry District Court, for hydrant service and electric lights, for salaries of Town officials, for the Board of Health, for the expense of Town buildings, for support of the libraries, for State and County taxes, for aid to the Derry Visiting Nurses Association, for the Greater Salem Mental Health Clinic, for regional associations, for the Federal governments in the control of insect pests, for ambulance service, and for all necessary charges arising in said Town, and pass any vote relating thereto."

Pursuant to Article 20 the deliberative meeting voted a line item budget, with provisions governing the salaries of certain town officers and employees. The salaries of the town manager, the town engineer, the recreation director, and the road agent were specifically included in the "budget details" considered at the meeting. Each of these salaries was in excess of $15,000. The salaries of the chief of police and the "waste water superintendent" were likewise in excess of $15,000 although not stated as separate items in the budget and not determinable by reference to the annual report.

The annual report for the year ending December 31, 1974 was available to residents on or about February 25, 1975, seven days

prior to the first session of the town meeting. It included the warrant for the 1975 town meeting, and the 1975 budget and "budget details", an item-by-item breakdown of anticipated expenditures for the year. The warrant contained a preamble indicating that the 1975 town meeting would be held in two sessions in accordance with RSA 39:2-a (Supp. 1975), the first session for voting on the "official ballot", and the second session for consideration of all other business.

By order of the selectmen dated March 17, 1975, the salaries of the town officials are being paid in accordance with the schedule adopted at the March 20 deliberative session. Following that order, the plaintiffs brought this action.

RSA 39:2-a (Supp. 1975) authorizes a bifurcated town meeting, the ostensible purpose of which is to provide for the election of town officials by ballot and similar voting upon other questions "required to be inserted upon said official ballot" in advance of the deliberative town meeting. The selectmen are authorized to choose another day for the second session, "for the transaction of all other town business." The statute specifically provides that "no business other than the election of town officers elected by an official ballot and other action required to be inserted on said official ballot shall be taken up at the first session" of the town meeting. Thus, unless the subject matter of any article is required by law to appear on the official ballot consideration of that subject is to be reserved for the deliberative session. The parties to this action disagree as to the application of the statutes to the action taken at the Derry town meeting.

The dispute centers around the provision in the statute which prohibits the first session of the town meeting from considering matters not "required to be inserted" on the official ballot. Comments from the senate floor preceding passage of the bill which became RSA 39:2-a (Supp 1975) indicate that this provision refers specifically to those matters which are committed *by statute* to the official ballot. *See* Comments of Senator Jacobson, N.H.S. Jour. 317 (1969). *See also* RSA 31:17-a, 31:63-c (Supp. 1975), 37:15, :17, 40-A:2, 60:38 (Supp. 1975), 72:44 (Supp. 1975), 156-A:1-a (Supp. 1975). It is not claimed that the fiscal matters to which Articles 10 and 12 relate are required by statute to be placed on the official ballot. The plaintiffs point out that other articles contained in the 1975 Derry official ballot were not specifically required by statute to be included therein. Nevertheless, they argue that if the selectmen place an item on the official ballot it is a proper subject for

consideration although not required to be thus submitted.

This argument overlooks the principle that a town meeting, capable of acting freely within its legal orbit, may validly reconsider a matter upon which it has already acted. *See Frost v. Hoar,* 85 N.H. 442, 160 A. 51 (1932); 4 E. McQuillin, Municipal Corporations § 13.48, at 566 (1968). What is more, the town meeting may accomplish this without a formal motion to reconsider. *See Hill v. Goodwin,* 56 N.H. 441, 448 (1876); *Frost v. Hoar,* 85 N.H. 442, 160 A. 51 (1932); *Lamb v. Danville School Board,* 102 N.H. 569, 571, 162 A.2d 614, 616 (1960); *Bullard v. Allen,* 124 Me. 251, 127 A. 722 (1925); E. McQuillin *supra.*

The agreed statement of facts indicates that on at least two occasions following the March 4 ballot vote the Derry News ran articles indicating that the salary limit contained in Article 10 might come up for reconsideration at the later session. *See Byron v. Timberlane Regional School Dist.,* 113 N.H. 449, 456, 309 A.2d 218, 222 (1973). The minutes of the deliberative session of the town meeting show that the voters were aware of the conflict between Article 10 and some items contained in the budget since open discussion of the possible conflict occupied a good part of the meeting on March 15. Against this background, a majority of the voters present on March 15 voted to authorize salaries in excess of $15,000. "'[A]ll public bodies have a right during the session to reconsider action taken by them as they think proper and it is the final result only that is to be regarded as the thing done.'" *Byron v. Timberlane Regional School Dist.,* 113 N.H. 449, 453, 309 A.2d 218, 221 (1973). Furthermore, the "session" may be construed to encompass both the March 4th and the March 15th meetings. *Id.*

The fact that fewer voters participated at the deliberative session than voted on Article 10 will not, of itself, invalidate the subsequent vote. Information was available whereby the voters could know that the disputed Article 10 would be subjected to reconsideration. "Their presence at the meeting and participation in the vote on these matters was their best means of insuring against" action inconsistent with Article 10. *Board of Selectmen v. School Bd.,* 113 N.H. 598, 603, 311 A.2d 124, 127 (1973). Moreover a vote indicating a preference for a $15,000 limit was not necessarily to be construed as a mandatory limitation applicable to all cases.

This is not to say that all votes taken by official ballot are necessarily void where the subject matter of the vote is not required by statute to be included on the ballot. Matters once voted on by the voters should be final absent some valid form of reconsideration.

*See New London v. Davis,* 73 N.H. 72, 76, 59 A. 369, 372 (1904); *Opinion of the Justices,* 114 N.H. 711, 713, 327 A.2d 713, 715 (1974). A de facto reconsideration may accomplish the desired result *(Hill v. Goodwin,* 56 N.H. 441 (1876); *Lamb v. Danville School Board,* 102 N.H. 569, 162 A.2d 614 (1960)) provided reconsideration has incorporated common notions of fair notice. However, matters required by statute to be placed on the official ballot would not be proper subjects of reconsideration since otherwise the statute could be effectively bypassed by means of a motion to reconsider. In the case before us Article 20 of the warrant gave fair notice of possible conflict with the proposal advanced by Article 10. We conclude that the reconsideration which took place in this case by the voting under Article 20 of the warrant was valid and is binding upon the town and its officers.

The plaintiffs also seek a declaratory judgment that Article 12 is valid and binding on all departments and town officials in Derry. The defendants urge that Article 12 is inconsistent with RSA 32:10 and :10-a of the Municipal Budget Law. RSA 32:10 provides that the board of selectmen may transfer an unexpended balance from one appropriation to another. The disputed Article 12 purports to restrict the spending of any municipal agency or officer to the amounts stated in the line item budget, "except for good cause", and then only with the approval of the budget committee following a public hearing.

Since the action of the voters under Article 12, by requiring "good cause" and approval of the budget committee after an advertised public hearing in order to deviate from the line item budget, is inconsistent with the statute which authorizes transfer of unexpended funds by the selectmen (RSA 32:10), the vote under Article 12 is invalid. *State v. Jenkins,* 102 N.H. 545, 162 A.2d 613 (1960); *Cutter v. Durham,* 109 N.H. 33, 241 A.2d 216 (1968).

*Remanded.*

All concurred.