Daniel **LECHT**

v.

Rowena **STEWART.**

No. 84–447–M.P.

Supreme Court of Rhode Island.

Nov. 5, 1984.

---

James J. Mullen, Barrington, for plaintiff.

Robert G. Flanders, Jr., Edwards & Angell, Providence, for defendant.

## OPINION

PER CURIAM.

This is a petition in equity in the nature of quo warranto that was filed with this court pursuant to the provisions of G.L. 1956 (1969 Reenactment) § 10–14–1. The petition of Daniel Lecht (Lecht) claims that he is the chairperson of the Rhode Island State Council on the Arts; on the other hand, Rowena Stewart (Stewart) claims that she is the council's chairperson. The council was created by the enactment in 1980 of P.L.1980, ch. 395, § 2, now known and referred to as G.L.1956 (1977 Reenactment) chapter 75 of title 42. The council consists of twelve members, all of whom are appointed by the Governor with the advice and consent of the Senate. The council has been designated as the official state agency for the acceptance of any funds distributed by the National Council for the Endowment of the Arts. One of the council's primary duties is the statewide stimulation and encouragement of the study and presentation of the performing, visual, and environmental arts.

The record indicates that on the evening of July 12, 1984, the council met for the specific purpose of electing a chairperson. At that time Lecht held that position. There were two nominees for "chair": Lecht and Stewart. When the votes after each ballot were tallied, there were six for Lecht and six for Stewart.

There is no need to detail events as the six-to-six deadlock continued on through the evening. However, at one point Lecht, after claiming that many on the committee had other duties to attend to that evening, declared a recess. He and his five supporters then left the premises. Marjorie Lee, as vice chairperson, became the presiding officer. Another ballot was taken, and Stewart received six votes. Section 42–75–5 provides that a quorum for conducting the commission's business will consist of no fewer than five members. The decisive issue in this dispute is whether Lecht could properly recess the meeting without taking and receiving an affirmative vote from a majority of the members present.

Both litigants conceded that the council has not at any time adopted any rules of procedure and that there are no statutory regulations spelling out the same. Thus, the council's deliberations on that evening were to be governed by gener-

ally accepted rules of parliamentary procedure. *McCormick v. Board of Education of Hobbs Municipal School District No. 16*, 58 N.M. 648, 662, 274 P.2d 299, 307–08 (1954). In determining proper parliamentary procedure, it is permissible to resort to Robert's Rules of Order (newly revised 8th ed., 1981), the widely accepted codification of parliamentary law. *Posner v. Bronx County Medical Society*, 19 A.D.2d 89, 94–95, 241 N.Y.S.2d 540, 545, *aff'd*, 13 N.Y.2d 1004, 195 N.E.2d 59, 245 N.Y.S.2d 393 (1963).

Robert's Rules characterizes a recess as a short intermission in an assembly's proceeding that does not "close" the meeting. Robert's Rules of Order, § 20 at 196–97. The manual differentiates between a motion to recess when no question is pending and one made while a question is pending. The latter motion is described as a "privileged motion to *Recess*"; one characteristic of such a motion is that it "[r]equires a majority vote." *Id.* at 197–98.

■ Clearly, then, when Lecht declared a recess, proper procedure dictated that one of the members first make a privileged motion to recess. That motion would have required a majority of votes to pass. Here, only six of the twelve members previously supported the several motions to recess or adjourn the meeting. Since the motion to recess or adjourn is an affirmative motion, such a motion fails when it is the subject of a tie vote. *Felice v. Swezey*, 278 A.D. 958, 959, 105 N.Y.S.2d 486, 488–89 (1951).

It follows that since the July 12, 1984 meeting cannot be considered a properly recessed or adjourned affair and a quorum was present after the Lecht supporters had left to discharge their various pressing obligations, the remaining half-dozen had authority to act on those matters coming within the council's jurisdiction. *Bray v. Barry*, 91 R.I. 34, 41–42, 160 A.2d 577, 581 (1960). As previously noted, a quorum for conducting the council's business requires the presence of five members. Consequently, since the remaining six members

all voted for Stewart after their colleagues had departed, Stewart was lawfully elected to the office of chairperson of the Rhode Island State Council on the Arts.

The petition is denied and dismissed, and on November 16, 1984, the respondent may present for entry a decree that is in accordance with this opinion.

BEVILACQUA, C.J., and SHEA, J., did not participate.