658 So.2d 1069 (1995)
The BOARD OF COUNTY COMMISSIONERS OF SARASOTA COUNTY, Florida, and Sarasota County, a political subdivision of the State of Florida, Petitioners,
v.
Ronald E. WEBBER, Respondent.
No. 95-00664.
District Court of Appeal of Florida, Second District.
June 30, 1995.
Rehearing Denied August 7, 1995.
*1070 Jorge L. Fernandez, County Atty., and Alan W. Roddy, Asst. County Atty., Sarasota, for petitioners.
William W. Merrill, III, of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for respondent.
LAZZARA, Judge.
The petitioners, the Board of County Commissioners of Sarasota County (the Board) and Sarasota County (the County), seek certiorari review of a final order of the circuit court acting in its review capacity quashing the Board's denial of a variance to the respondent. We have jurisdiction. Fla. R.App.P. 9.030(b)(2)(B). We quash the order because the circuit court deviated from the essential requirements of the law in determining that the Board's denial was of no force and effect and in applying an incorrect standard of review.
In October of 1993, the respondent sought a variance from the Board to construct a home on a parcel of land governed by the County's Coastal Setback Ordinance. Sarasota County, Fla., Ordinance 79-03 (as amended by Ordinance 86-24) (1986). Under the ordinance, all construction and excavation seaward of a fixed line along the Gulf of Mexico is prohibited. The objective of the ordinance is to protect the County's unincorporated coastal areas directly exposed to the Gulf of Mexico from erosion and flooding by establishing a "Gulf Beach Setback Line" beyond which construction and excavation may not occur. Id. at § 1.2. The Board, however, has the discretion to grant a variance and permit construction within this protected area if, after a duly noticed public hearing, it determines that:
the strict enforcement of the provisions of this ordinance would impose an unreasonable hardship and such variance will not adversely affect vegetation, sand dunes or other beach stabilizing features, nor be in substantial conflict with the attainment of the purposes of this ordinance.
Id. at § 4.1.
If the Board approves a variance, it can only grant "the minimum variance necessary to permit reasonable use of the property." Id. Furthermore, such a variance "shall not be modified or terminated without notice and an opportunity to be heard on the part of the person to whom the variance has been issued." Id.
The Board considered the respondent's request for a variance at two properly noticed public hearings, with the County's Natural Resources Department (the Department) recommending denial of the variance. The Department's reasons for denial were presented by its manager, who was accepted as an expert without objection. He testified that the area in question, because of its lowlying nature, was subject to frequent inundation and overwash associated with storm activity and that such had occurred on seven different occasions since September of 1992. Because of this fact, he stated there was a reasonable expectation that a home constructed on the property would be damaged by storm-wave activity. He also testified that the property exhibits a trend of shoreline erosion and that the shoreline in this vicinity is eroding at the rate of three to four feet a year and had in fact retreated landward as much as fifty-eight feet between June of 1987 and August of 1993. He also related that construction on this land would impede the stabilizing function of existing sand dunes and associated vegetation. Thus, he concluded that the criteria for obtaining a variance had not been met and the granting of a variance would conflict with the objectives of the ordinance.[1]
Although the respondent generally disputed the findings of the Department, his main focus, through his attorney, was that a denial would result in a deprivation of all economic *1071 use of the property. He also questioned the propriety of denying a variance when property to the immediate south, as well as other parcels in the vicinity, had been granted variances.
At the conclusion of the second public hearing, the Board voted three to two to approve the variance. It then recessed for five minutes. Upon the Board's return to consider an unrelated matter in which respondent's attorney was also involved, one of the Board's members, who had voted in favor of the variance, announced that he had had a "lapse of consciousness" in casting his vote, indicating that he thought he was voting to deny the variance. As a consequence, he made a motion to reopen the hearing, which the Board unanimously passed. After receiving further presentations from the Department and the respondent, the Board voted three to two to deny the variance.
Quite naturally, respondent's attorney objected to this procedure and questioned whether over the recess the Board members had privately discussed substantive issues involving his client's request for a variance, as well as reopening the hearing, thus suggesting a possible violation of Florida's "Government in the Sunshine Law." See § 286.011, Fla. Stat. (1993). The Board member who changed his vote replied by recounting that all he did was ask another member to clarify procedurally what transpired in terms of whose motion was on the floor to be voted on. He further related that after he determined he had misunderstood what he was voting on, he immediately notified respondent's attorney of this fact and advised him of his intent to have the Board reconsider the matter. Respondent's attorney accepted these representations.
The respondent later filed a five-count complaint in circuit court. Count I sought certiorari review of the Board's denial of his variance. Counts II-V sought a declaratory judgment, injunctive relief, and compensation based on a "takings" theory.
After a hearing on count I, the circuit court granted certiorari and entered a partial final judgment quashing the Board's denial of the respondent's variance.[2] It determined that the Board "departed from the essential requirements of law and violated [respondent's] procedural due process rights by opening another public hearing on the previously approved variance, requesting and hearing new evidence, and then voting to deny the previously approved variance, all without providing notice as required by law." The circuit court thus concluded that the denial was "improper, invalid, null and of no force and effect." It also ruled that strict enforcement of the ordinance imposed an unreasonable hardship on the respondent because without the variance he had no reasonable, beneficial, or economically viable use of the property, "which would constitute a compensable taking." Significantly, however, the circuit court never undertook an analytical review of whether the Board's denial of the variance was supported by substantial, competent evidence.
In reviewing the circuit court's order under rule 9.030(b)(2)(B), our standard is to determine "whether the circuit court afforded procedural due process and applied the correct law." Education Dev. Ctr., Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla. 1989) (quoting City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982)). Although we reject the contention that the circuit court failed to afford procedural due process, we do agree that it applied the incorrect law in overturning the Board's ultimate denial of the variance.
We first address the propriety of the Board's reopening the public hearing to reconsider its vote within minutes after it approved respondent's variance. A basic rule of parliamentary law is that "[u]nless some right of a third person intervenes, all deliberative bodies have a right to reconsider their proceedings during their session, as often as they think proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing *1072 done." 67A C.J.S. Parliamentary Law § 9 (1978); see also 59 Am.Jur.2d Parliamentary Law § 15 (1987); Toffolon v. Zoning Bd. of Appeals of Town of Plainville, 155 Conn. 558, 236 A.2d 96 (1967) (stating same rule). Our Florida Supreme Court recognized this rudimentary principle long ago by stating that "[a]ll deliberative bodies, during their session, have a right to reconsider their proceedings as they deem proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done." Crawford v. Gilchrist, 64 Fla. 41, 59, 59 So. 963, 969 (1912). Generally, however, an essential requirement for reconsideration is that the motion to reconsider be made by one who voted with the majority on the motion to be reconsidered. Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134 (1925).
In this case, the Board's reconsideration of the grant of the variance clearly satisfied the essential requirements of parliamentary law. First, given the short length of time between the two votes, it would be unreasonable to conclude that the official change of mind was detrimental to any rights the respondent may have acquired by virtue of the first vote. See, e.g., Sharrow v. City of Dania, 83 So.2d 274 (Fla. 1955). Second, the Board member who moved to reconsider was part of the initial majority.
More important, the Board clearly afforded the respondent all of the essential requirements of due process before it reached a final decision. Upon learning of his mistake, the Board member who voted erroneously immediately notified respondent's counsel that he intended to seek reconsideration of the granting of the variance. Then, after the hearing was reopened, the Board gave respondent's counsel ample opportunity to be heard and to voice his objections after receiving the Department's supplemental presentation. See Dawson v. Saada, 608 So.2d 806 (Fla. 1992). Moreover, the Board also strictly complied with the provisions of the ordinance by not terminating the variance until a motion to that effect had been made and the respondent was given an opportunity to be heard.
Finally, with respect to any discussions between the Board members during the recess, we conclude from this record that such discussions did not violate section 286.011, which provides in part that "[a]ll meetings of any board or commission ... of any county ... at which official acts are to be taken are declared to be public meetings ... and no ... formal action shall be considered binding except as taken or made at such meeting." The record is clear that the topic of conversation between certain Board members was the procedural circumstances preceding the taking of the first vote and not the substantive merits of respondent's request for a variance, a fact which the respondent's attorney conceded before the Board. There is absolutely no evidence suggesting that the Board agreed in secret during the recess to reconsider and deny the respondent's variance and then perfunctorily ratified this decision at the public hearing held a few minutes later. See Tolar v. School Bd. of Liberty County, 398 So.2d 427 (Fla. 1981). Moreover, to the extent there was a technical violation of the statute by virtue of a private discussion among Board members during the recess, such a violation did not invalidate the Board's later action. See Yarbrough v. Young, 462 So.2d 515 (Fla. 1st DCA 1985).
We conclude, therefore, that the Board acted in clear accord with the law in reconsidering and then changing its vote approving the variance and, in doing so, did not deprive the respondent of procedural due process nor violate the "Sunshine Law" or the ordinance. Accordingly, the circuit court departed from the essential requirements of the law in declaring the Board's subsequent denial of the variance invalid.
We also conclude that the circuit court employed an incorrect standard of review by limiting its consideration to the issue of whether the denial of the variance would impose an unreasonable hardship on respondent to the extent it would constitute a compensable taking of his property. That was not the appropriate issue for it to consider on certiorari review in this case. Instead, the circuit court should have reviewed the evidence before the Board and determined whether there was substantial, competent evidence *1073 to support its denial of respondent's request for a variance, in light of all the criteria of the ordinance. As the supreme court has noted:
The question is not whether, upon review of the evidence in the record, there exists substantial competent evidence to support a position contrary to that reached by the agency. Instead, the circuit court should review the factual determination made by the agency and determine whether there is substantial competent evidence to support the agency's conclusion.
Education Dev. Ctr., Inc., 541 So.2d at 107-108 (quoting City of West Palm Beach Zoning Bd. of Appeals v. Education Dev. Ctr., Inc., 504 So.2d 1385, 1386 (Fla. 4th DCA 1987)) (emphasis in original). Accordingly, we must remand this matter to the circuit court with directions that it redetermine the appropriateness of the Board's denial using the correct standard.
We, therefore, grant certiorari, quash the circuit court's order, and remand with directions that it review the record of the proceedings before the Board and determine whether there exists substantial, competent evidence to support the denial of respondent's variance. In doing so, however, we emphasize that nothing in this opinion should be construed as indicating whether such evidence does or does not exist because that is beyond the reach of our certiorari jurisdiction in this case. See Gomez v. City of St. Petersburg, 550 So.2d 7 (Fla. 2d DCA 1989).
Certiorari granted, order quashed, and cause remanded with directions.
RYDER, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] The Department's written analysis recommending denial was also before the Board.
[2] The proceedings as to counts II-V of respondent's complaint have been stayed pending our review of the circuit's ruling on count I.