Alan J. HIRSCHFIELD; Berte E. Hirschfield; Margaret K. Jones; Doyen McIntosh; Robert MacLean; Mary Anna MacLean; Lester S. Morse, Jr.; Enid W. Morse; Richard P. Morse; Stanley Seidler; Pike A. Sullivan; Susan W. Sullivan; Richard Vaughn; Mary M. Vaughn; William Wilson III; and Pat Wilson, Appellants (Plaintiffs),

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TETON, a political subdivision of the State of Wyoming; and Thomas M. Falcey, Chapter 11 trustee of the estate of Rivermeadows Associates, Ltd., a California limited partnership, Appellees (Defendants).

No. 96–203.

Supreme Court of Wyoming.

Sept. 11, 1997.

lee Thomas M. Falcey, Chapter 11 Trustee of the Estate of Rivermeadows Associates, Ltd.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellants are adjoining property owners (homeowners) seeking a declaratory judgment that appellees, the Board of County Commissioners of Teton County (Board), rejected Rivermeadows Associates, Ltd. (Rivermeadows) concept plan for a proposed subdivision when its vote ended in a tie, and the Board acted beyond its authority in voting again on the matter and unanimously approving it. The district court ruled the Board's regulations permitted it to vote again and approve the plan and granted summary judgment to the Board.

We affirm the district court's order.

### ISSUES

Homeowners present this single issue:

1. Whether the District Court erroneously held as a matter of law that the 2 to 2 tie vote by the Board of County Commissioners on the development application of Rivermeadows Associates, Ltd. resulted in "no action" subject to reconsideration, instead of concluding that the tie vote resulted in the denial of the application pursuant to the common law, Wyoming statute, and the Board's own regulations.

The Board did not file a brief. The court ordered the substitution of Thomas M. Falcey, Chapter 11 Trustee of the Estate of Rivermeadows, as defendant. Trustee presents two issues for our review:

1. Whether the trial court had, or this Court has, subject matter jurisdiction over the action.

2. Whether the trial court erred in determining that the Board of County Commissioners of Teton County properly approved the application of Rivermeadows Associates, Ltd. for concept plan approval.

William P. Schwartz and Timothy C. Day of Ranck, Schwartz & Day, LLC, Jackson, for Appellants.

Donn J. McCall and Jon B. Huss of Brown, Drew, Massey & Sullivan, Casper, for Appel-

## FACTS

The facts are not in dispute. Homeowners own property in a subdivision developed by Rivermeadows. As property owners, the homeowners were granted access rights to nearby fishing creeks. In 1992, Rivermeadows requested approval to add sixty additional homes to the subdivision in accordance with the Teton County Comprehensive Plan and Implementation Program administered by the Board. As required by the plan, Rivermeadows' proposal was first evaluated by the Board's planning commission. A new comprehensive county zoning plan which would have limited the number to thirty homes was scheduled for consideration on May 2, 1994, and if adopted was scheduled to go into effect May 9, 1994. In March of 1994, the planning commission recommended that the Board of County Commissioners for Teton County approve the Rivermeadows concept plan with conditions and on April 26, 1994, the Board met to consider the concept plan and to take public comment.

After discussion and public comment, the Board voted on a motion to approve the concept plan with a number of conditions. The vote resulted in a two to two tie. Uncertain about the effect of a tie vote and wanting to continue the discussion, the Board ran short of time and decided to continue the meeting to May 2, 1994. On May 2, the concept plan was approved with four commissioners in favor and one abstaining. That afternoon, the Board adopted the new comprehensive plan.

The homeowners did not file a petition for review of the administrative action. Almost three months later, homeowners filed a declaratory judgment action seeking a declaration that the Board's approval was invalid and that the concept plan had to be processed under the new comprehensive county zoning plan. On homeowners' motion for summary judgment and Rivermeadows' cross-motion for summary judgment, the district court ruled that it had subject matter jurisdiction based upon WYO. R.APP. P. 12.12. The trial court affirmed the Board's approval because the applicable land use development regulations of the comprehensive plan allowed the Board to table the issue until the May 2, 1994, meeting. The district court granted summary judgment to Rivermeadows, and this appeal followed.

## DISCUSSION

### Standard of Review

■ Summary judgment is proper if there are no genuine issues of material fact and movant is entitled to judgment as a matter of law. WYO. R. CIV. P. 56(c); *Mountain Cement Co. v. Johnson,* 884 P.2d 30, 32 (Wyo. 1994). A court considers the summary judgment record in the light most favorable to the party opposing the motion and gives that party the benefit of all favorable inferences which may fairly be drawn from the record. We use the same materials and standards as the district court, accord no deference to the district court's decisions on issues of law, and may affirm the summary judgment on any legal grounds appearing in the record. *State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo.1995).

In this appeal, homeowners contend that the effect of the tie vote is controlled by common law which holds that a tie vote constitutes a rejection of the proposal and that the Board acted beyond its authority in reconsidering and voting again on the concept plan. Trustee contends that this Court lacks subject matter jurisdiction because homeowners failed to exhaust their administrative remedies, the subject matter is not a proper one for declaratory judgment under Rule 12.12, and a justiciable controversy is not presented.

> [S]ubject matter jurisdiction cannot be waived. *Cotton v. Brow,* 903 P.2d 530, 531 (Wyo.1995); *Brunsvold v. State,* 864 P.2d 34, 36 (Wyo.1993). "The first and fundamental question on every appeal is that of jurisdiction; this question cannot be waived; it is open for consideration by the reviewing court whenever it is raised by any party, or it may be raised by the court of its own motion."

*Pawlowski v. Pawlowski,* 925 P.2d 240, 243 (Wyo.1996) (quoting *Gookin v. State Farm Fire and Casualty Ins. Co.,* 826 P.2d 229, 232 (Wyo.1992)).

*Availability of Declaratory Judgment*

■ "The purpose of declaratory judgment actions is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies." *Millett v. Hoisting Engineers' Licensing Div.*, 119 R.I. 285, 377 A.2d 229, 233 (1977) (citing 1 ANDERSON, ACTIONS FOR DECLARATORY JUDGMENTS § 4 (2d ed.1951)). Wyoming's declaratory judgment statute states that it is remedial and should be liberally construed and administered. WYO. STAT. § 1–37–114 (1997). We do not interpret it in a narrow or technical sense, and there remains the prerequisite that the party seeking declaratory relief present the court with an actual controversy. *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo.1982). Trial judges may not dispense with the traditional rules prohibiting them from rendering advisory opinions or adjudicating hypothetical issues. An action for declaratory judgment cannot be a substitute for an appeal from administrative decisions but is available even though there is a statutory method of appeal if it concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be based. *Id.; M & B Drilling and Constr. Co. v. State Bd. of Equalization*, 706 P.2d 243, 246 (Wyo.1985).

■ As directed by the statute, our past decisions have liberally construed the availability of an action for declaratory judgment to consider issues arising from agencies' interpretations of statutes. *State Bd. of Equalization v. Jackson Hole Ski Corp.*, 737 P.2d 350, 354–55 (Wyo.1987), *modified on other grounds*, 745 P.2d 58 (Wyo.1987); *State v. Kraus*, 706 P.2d 1130, 1133 (Wyo.1985); *Rocky Mountain Oil*, 645 P.2d at 1166–69. Our decision in *Rocky Mountain Oil* determined that some decisions by an administrative agency are not subject to a declaratory judgment action. We have also held that while non-legislative decisions by county commissioners are reviewable under the Wyoming Administrative Procedure Act, amendments to zoning laws are legislative acts and, as such, are not reviewable. *Holding's Little America v. Bd. of Cty. Comm'rs of Laramie Cty.*, 670 P.2d 699, 703 (Wyo.1983); *McGann v. City Council of City of Laramie*, 581 P.2d 1104, 1106 (Wyo.1978). We have said that the approval of a planning unit development plat is tantamount to amending zoning regulations and is, therefore, a legislative act that is not reviewable under the Wyoming Administrative Procedure Act. *McGann*, 581 P.2d at 1107. This case questions a decision by the agency with respect to the application of a rule of parliamentary procedure. We have not previously had occasion to consider whether the application of rules of parliamentary procedure is a proper subject for a decision under the declaratory judgment act. The homeowners are not seeking a determination as to whether or not Rivermeadows' development application should have been granted or denied on its merits, as that is for the Board to decide. The homeowners seek instead review of the Board's parliamentary procedural decision that a tie vote constitutes no action and the Board can vote again in a meeting which was continued until the next week. The present action thus involves the Board's procedures and its authority to engage in the actions at issue which present questions of law.

■ Trustee asserts that homeowners have not presented a justiciable controversy because they do not have standing or a tangible interest at stake.

The jurisprudential principles underlying the standing, ripeness, and mootness doctrines are embodied in the definition of a justiciable controversy adopted in *Brimmer [v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974) ]. The *Brimmer* court identified the following four elements as being necessary to establish a justiciable controversy under the Uniform Declaratory Judgments Act:

1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Reiman Corp. v. City of Cheyenne,* 838 P.2d 1182, 1186 (Wyo.1992); *Brimmer,* 521 P.2d at 578.

▇ "Standing is a concept utilized to determine if a party is sufficiently affected to insure that a justiciable controversy is presented to the court." *Memorial Hosp. of Laramie Cty. v. Dept. of Revenue & Taxation,* 770 P.2d 223, 226 (Wyo.1989) (quoting *Washakie County School District No. 1. v. Herschler,* 606 P.2d 310, 316 (Wyo.1980), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980)). "A plaintiff has standing only if he has a tangible and legally protectible interest at stake in the litigation; his interest must be injured or threatened with injury by the administrative action of which he complains." *Memorial Hosp.,* 770 P.2d at 226. We have held that an adjoining landowner has standing when the effect of the board's decision will be to double the density previously permitted. *Hoke v. Moyer,* 865 P.2d 624, 628 (Wyo.1993). Doubling the density of adjacent property raises a number of perceptible harms for a property owner which are different from the harm to the general public, such as increased traffic and congestion. *Id.* In this case, a decision in favor of the homeowners would hold that the tie vote constituted a rejection of the concept plan to add sixty more homes to the subdivision. Rivermeadows would then be required to request reconsideration of its proposal under the new zoning plan which would limit the number of homes to thirty. The homeowners' interest at stake is the density of the addition to the subdivision which will affect their access rights to the fishing creeks, and we hold they do have standing to bring this declaratory judgment action.

*Authority To Continue Consideration*

The statute governing the adoption of planning recommendations by a board of county commissioners is Wyo. Stat. § 18-5-202(c) (1997) which provides (emphasis added):

The planning and zoning commission shall prepare recommendations to effectuate the planning and zoning purposes and certify its recommendations to the board of county commissioners. Before adopting the recommendations the board shall hold at least one (1) public hearing. Notice of the time and place of hearing shall be given by one (1) publication in a newspaper of general circulation in the county at least fourteen (14) days before the date of the hearing. After public hearing has been held, the board shall vote upon the adoption of the planning or zoning recommendation. *No planning or zoning recommendation shall be adopted unless a majority of the board votes in favor thereof.*

The Teton County Comprehensive Plan in effect at the time the tie vote was taken states (emphasis added):

b. SECOND: After the preapplication conference a CONCEPT PLAN shall be required. The Planning Commission shall review the concept plan and its supporting materials. Withing thirty days the Commission shall recommend approval to the Board of County Commissioners, recommend disapproval, or table the request for additional information, different design solutions, or different categories of uses. The Board of County Commissioners, considering the recommendation of the Planning Commission, shall review the application and *approve, disapprove, or table the proposal* for specific additional information or solutions. Conditions of approval may be attached by either the Planning Commission or the Board of County Commissioners.

Homeowners contend that, under the statute, the tie vote could not result in the required majority, and the concept plan was

disapproved. They further contend that the Board's decision to continue the meeting and vote again was an attempt to table the motion which was ineffective because the tie vote was a disapproval and must stand as a final decision. In their view, the Board lacked the authority to vote again. Trustee contends that nothing in the statute or the regulation prevents the Board from voting again during the same session. He characterizes the meeting held a week later as the same session because it was continued and presents several decisions by other jurisdictions stating that a session can occur on several different days.

■■■■ Plainly, neither the statute nor the regulation speak to the effect of either a tie vote or multiple votes in the same session. In the absence of a contrary provision, the Board's deliberations are to be governed by generally accepted rules of parliamentary procedure, and we, therefore, accept homeowners' contention that common law or parliamentary law regards a tie vote on an affirmative resolution or action as a rejection. *Lecht v. Stewart,* 483 A.2d 1079, 1081 (R.I. 1984) (citing *Felice v. Swezey,* 278 A.D. 958, 105 N.Y.S.2d 486, 488–89 (1951)); 59 Am. Jur.2d *Parliamentary Law* §§ 3, 14 (1987). Trustee contends that even if we accept that the tie vote was a rejection, parliamentary law allows a deliberating body the right, during its session, to reconsider its proceedings. *Byron v. Timberlane Regional School Dist.,* 113 N.H. 449, 309 A.2d 218 (1973), states that unless otherwise provided by law all public bodies have the right during any particular session to reconsider such action taken by them as they believe is proper and that it is only the final result that should be regarded as the thing done. *Id.* at 221; 59 Am.Jur.2d *Parliamentary Law,* § 15 (1987). This is true even when a final resolution has been passed. *Board of Cty. Comm'rs of Sarasota County v. Webber,* 658 So.2d 1069, 1071–72 (Fla.App. 2 Dist.1995). A public board may reconsider its decisions in the same session, even if the "session" occurs on several different days. *Toffolon v. Zoning Board of Appeals of the Town of Plainville,* 155 Conn. 558, 236 A.2d 96, 99 (1967). A "session" is a meeting which, though it may last for days, is virtually one meeting. Roberts Rules of Order (Revised) § 8 at 83 (Revised 1990).[1]

In *Toffolon,* a zoning board met on the same matter on three different days, weeks apart. *Toffolon,* 236 A.2d at 99. The court held it constituted but one continuing "session" because at the end of the first two meetings, the board did not adjourn, did not announce its initial decision, and no rights of third parties intervened. *Id.* At the end of the first two sessions the board merely recessed until the next meeting for further deliberations on the same matter. *Id.* When they recessed, the board members "were aware that no final decision had been reached … and that there would be further deliberations on that matter." *Id.* According to the court,

> [t]he rule in such situations is that, unless some right of a third person intervenes, all deliberative bodies have a right to reconsider their proceedings during a session as often as they think proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done.
>
> * * *
>
> The several votes were but steps taken toward a single, final decision.

*Id.,* 236 A.2d at 99–100 (citations omitted).

In *Appel v. State ex rel. Shutter–Cottrell,* 9 Wyo. 187, 61 P. 1015 (Wyo.1900), an attorney presented a claim for payment which was rejected by the board of county commissioners. In a later meeting, the board reconsidered and approved the payment. In an action for mandamus to order the chairman to pay the bill, the court considered whether the board had the power to reconsider its action and approve payment having once rejected relator's claim. *Appel,* 9 Wyo. at 203, 61 P. at 1019. We held that "it is settled that at any time before the rights of third persons have become vested which would be interfered with by a reconsideration, a corporate

---

**1.** Roberts Rules of Order are a widely accepted codification of parliamentary law. *Lecht,* 483 A.2d at 1081.

board may, if not inconsistent with its charter or the law creating and governing it, and its rules of action, reconsider and rescind previous votes and orders." *Id. Appel*'s ruling precisely states parliamentary law.

Homeowners list three of our later decisions which hold that a political subdivision does not have the inherent authority to reconsider final decisions and the power to reconsider must be granted by the state: *Jackson Paint & Glass, Inc., v. Town of Jackson Bd. of Adjustment*, 811 P.2d 293, 295 (Wyo.1991); *Rosenberger v. City of Casper Bd. of Adjustment*, 765 P.2d 367, 369 (Wyo.1988); *Hupp v. Employment Security Comm'n*, 715 P.2d 223, 225 (Wyo.1986). Homeowners assert that this situation is not any different and must be decided the same. Involved in those decisions was the issue of whether an agency could grant rehearing of a final decision without express statutory authority. *Jackson* clarified that, generally, an agency's enabling statute provides the authority to adopt rules allowing rehearing and express statutory authority is not necessary. *Jackson*, 811 P.2d at 295. We agree with Trustee that, in this case, because the Board chose to continue its meeting and did not adjourn, the session continued and the rejection of the proposal by a tie vote was not a final decision. The rule stated in *Jackson*, therefore, does not answer the precise issue in this case.

After the tie vote, the board decided to continue the April 26 meeting until May 2 for further deliberations on the concept plan because of a lack of time, to further consider conditions, and to seek a majority vote. On May 2, the record shows that the Board considered the meeting to be a continuation and acted accordingly. At that meeting, the conditions imposed were revised, and the concept plan then received approval by a unanimous vote. The precise issue presented then is whether the Board can reconsider an action in the same session. Our rule in *Appel* remains applicable. The Board can reconsider an action in the same session unless statute or its own regulations say otherwise.

The decision of the district court is affirmed.