2001 WY 86

The WYOMING COMMUNITY COL-
LEGE COMMISSION; Cynthia Lum-
mis, Wyoming State Treasurer, in Her
Official Capacity; and Max Maxfield,
Wyoming State Auditor, in His Official
Capacity, Appellants (Defendants),

v.

CASPER COMMUNITY COLLEGE DIS-
TRICT, STATE OF WYOMING; Lara-
mie County Community College District,
State of Wyoming; Northern Wyoming
Community College District, State of
Wyoming; Northwest Community Col-
lege District, State of Wyoming; and
Western Wyoming Community College
District, State of Wyoming, Appellees
(Plaintiffs).

Fremont County Community College Dis-
trict, State of Wyoming; and Eastern
Wyoming Community College District,
State of Wyoming, Appellants (Interve-
nors),

v.

Casper Community College District, State
of Wyoming; Laramie County Commu-
nity College District, State of Wyoming;
Northern Wyoming Community College
District, State of Wyoming; Northwest
Community College District, State of
Wyoming; and Western Wyoming Com-
munity College District, State of Wyo-
ming, Appellees (Plaintiffs).

Nos. 99–292, 99–293.

Supreme Court of Wyoming.

Sept. 18, 2001.

Gay Woodhouse, Attorney General, and Rowena L. Heckert, Deputy Attorney General, Representing Appellants. Argument by Ms. Heckert.

John M. Walker of Hickey, Mackey, Evans & Walker, Cheyenne, WY, and Wesley A. Roberts of Roberts & Watkins, Riverton, WY, Representing Appellants (Intervenors). Argument by Messrs. Walker and Roberts.

Tracy J. Copenhaver of Copenhaver, Kath & Kitchen, Powell, WY; Ford T. Bussart of Bussart, West, Rossetti, Piaia & Tyler, Rock Springs; Wallace L. Stock of Bailey & Stock, Cheyenne, WY; Houston Williams of Williams, Porter, Day & Neville, Casper, WY; and Hayden F. Heaphy, Jr. of Davis & Cannon, Sheridan, WY, Representing Appellees. Argument by Messrs. Copenhaver and Bussart.

Before LEHMAN, C.J., and THOMAS,* MACY,** and GOLDEN, JJ., and SPANGLER, D.J., Ret.

LEHMAN, Chief Justice.

[¶1] Appellants, Wyoming Community College Commission et al. (Commission) and Intervenor Community Colleges seek reversal of the district court's grant of declaratory judgment in favor of appellee Community Colleges. The district court ruled the defendant Commission had violated its governing statutes and its own rules by distributing funds appropriated for salary increases outside of the general distribution formula established pursuant to Wyo. Stat. Ann. § 21–18–202(a)(xiv) (Lexis 1999). The district court then granted summary judgment to the appellee Community Colleges and ordered the Commission to distribute the funds through the formula. We conclude the district court erred in its interpretation of the applicable statutes and reverse and remand with instructions to enter an order consistent with this opinion.

## ISSUES

[¶2] Appellant Commission presents the following issues for review:

I. Does the Court have subject matter jurisdiction when a declaratory judgment action has been used as a substitute for a petition for review of a final agency action?

II. In administering the state support for the community college system, may the Wyoming Community College Commission distribute money appropriated to raise salaries to a specific level in the manner which best effectuates the legislative intent for making the appropriation?

III. Is a reasonable harmonization by the Commission of the statutes it implements entitled to judicial deference?

IV. Was the Commission required to promulgate the funding formula as a rule, and

---

* Concurred prior to retirement. ** Retired June 2, 2000.

can a statement of Commission policy become a rule without having been promulgated in substantial compliance with the W.A.P.A.?

V. Is the Commission practice of effectuating the intent of the Legislature appropriate and lawful?

Appellee Community Colleges state the issues thus:

A. The trial court and this court have subject matter jurisdiction over this declaratory judgment action.

B. The trial court properly interpreted Wyoming statutes and properly ruled that the Wyoming Community College Commission violated those statutes.

C. The Wyoming Community College Commission violated its own rules.

D. The Wyoming Community College Commission violated its own policy and procedures.

Appellant–Intervenor Community Colleges presents this additional issue:

I. Did the trial court commit error when it failed to take into consideration the Wyoming Legislature's acquiescence in the final decision of the WCCC?

### FACTS

[¶ 3] The Wyoming Community College Commission is an agency charged with, among other duties, the operation and maintenance of the state's community college system as well as the administration and distribution of state support authorized by the legislature for Wyoming's seven community college districts.[1] In 1996, in recognition of the effect of wage levels on the retention of quality staff within the community college system, the Commission and community colleges cooperatively adopted a "salary compa-rator policy." This policy expressed the Commission's goal that faculty, non-teaching professional, and administrator salaries reach 100% of the *mean* salary for each category of employee as reported in the Mountain States' Association of Community Colleges (MSACC) annual salary survey. Stated more simply, the goal was to match the region's average salary for each category of employee. The policy also outlined the goal that support staff salaries reach 100% of local, in-state, market salary surveys for comparable positions. The MSACC salary survey's mean and local, in-state, market surveys were the two "comparator groups" to which Wyoming salaries of each category were to be compared.

[¶ 4] In 1997, the Commission determined that as part of its 1999–2000 biennium standard budget request to the legislature it would ask for funding to allow the colleges to achieve the state policy salary goal of reaching 90% of comparator group levels. The Commission later determined that as part of its 1999–2000 biennium exception budget request it would ask for additional funds to allow the colleges to achieve the Commission's own salary goal of reaching 100% (the mean) of comparator group levels. To that end, the Commission requested that each of the state's seven community colleges calculate and report the funding it would need to achieve both the 90% and 100% target salary levels as compared to the applicable comparator groups. The Commission neither specified a uniform method to be utilized by the community colleges in calculating their salary and benefits needs nor analyzed the colleges' submissions to determine whether comparable methods were used. The figures submitted by each community college for the biennium are outlined below as Table 1:

| College | 90% funding level request | 100% funding level request |
|---|---|---|
| Casper College | $ 69,909 | $ 776,394 |
| Central Wyoming College | $ 673,490 | $ 1,696,942 |
| Eastern Wyoming College | $ 403,722 | $ 1,104,390 |
| Laramie Cty. Comm. College | $ 0 | $ 1,055,238 |
| Northwest College | $ 150,458 | $ 1,494,074 |
| Northern Wy. Comm. College | $ 87,597 | $ 1,083,072 |
| Western Wy. Comm. College | $ 0 | $ 590,602 |
| Totals | $ 1,385,176 | $ 7,800,712 |

1. Wyo. Stat. Ann. § 21–18–202(a)(ii) & (vii) (Lexis 1999).

[¶ 5] The 90% level total of $1,385,176 was incorporated into the Commission's standard budget request, presented with specific reference to the legislature's Joint Appropriations Committee, and ultimately included in the legislature's appropriation to the Commission. However, the $1,385,176 for salary enhancement was not separately earmarked but was rather included in the general fund state aid appropriation of $88,567,228. *See* 1998 Wyo. Sess. Laws ch. 30, § 057.

[¶ 6] Before distributing the appropriated funds to the colleges, the Commission examined four distribution options. Option (1) proposed distribution of all funds through the Commission's general distribution formula. The distribution formula, established pursuant to Wyo. Stat. Ann. § 21–18–202(a)(xiv) is a detailed model developed by the Commission, with input from the community colleges, that distributes funds to the colleges based upon various factors, chief among them, full time equivalency enrollment and square footage. Option (2) proposed distribution of the block grant through the general formula excepting the $1,385,176 for salary enhancement, which would instead be distributed to each college according to the sum previously submitted to the Commission as the college's salary need.[2] Option (3) proposed distribution of the block grant through the general formula excepting the salary enhancement funds and equipment replacement funds. Option (4) proposed distribution of all funding through the general formula with a caveat to colleges that they use the funds available to bring salaries to 90% of market comparator for all employee classifications. Table 2 below outlines the amounts each college would receive under options (1) and (2):

| College | Total by Straight Formula Option (1) | Block Grant by Formula Salary by Need Option (2) | Difference |
|---|---|---|---|
| Casper | $31,517,585 | $31,277,006 | -$240,579 |
| Central Wyo. | $12,941,777 | $13,487,774 | $545,997 |
| Eastern Wyo. | $10,295,216 | $10,597,517 | $302,301 |
| LCCC | $26,980,742 | $26,714,948 | -$265,794 |
| Northwest | $19,008,832 | $18,972,029 | -$ 36,803 |
| Northern Wyo. | $18,946,999 | $18,847,944 | -$ 99,055 |
| Western Wyo. | $20,917,854 | $20,711,787 | -$206,067 |

[¶ 7] Not surprisingly, Central and Eastern Community Colleges (Appellant–Intervenors) favored Option (2) while the five remaining colleges (appellees) favored Option (1). The Administrative Services Council, comprised of the seven business managers for the community colleges, citing the stability and reliability it provides, unanimously voted to recommend that all funding be distributed through the formula [Option (1) ]. On April 3, 1998, after lengthy discussion of the subject, the Commission voted 4–2 to distribute $1,385,176 of the state aid appropriation outside the formula as proposed by Option (2). Subsequently, a legislative member of the Joint Appropriations Committee asked the Commission to provide the methodologies used by each community college in calculating its original salary needs projections which were later included in the Commission's budget request. It was only then discovered that each college had used a different method in calculating its salary projections, thus contributing to the disparate results in requested funds.

[¶ 8] For example, Laramie County Community College averaged its faculty salaries, determined that its average was greater than 90% of the MSACC survey mean (the comparator group), and thus concluded that it needed $0 to achieve the 90% salary level goal. Likewise, Casper College calculated its faculty need in the same manner and requested $0 for faculty salary increases. The college later explained in its response to the legislator that 52% of its faculty were paid less than the 90% level of the comparator group, a statistic its method failed to accurately reflect.

[¶ 9] In contrast, Eastern Wyoming College did not average its faculty salaries;

---

**2.** See Table 1 *supra.*

rather it compared each individual salary to the MSACC mean and requested funding to bring all salaries up to the 90% level. Central Wyoming College included part-time benefited employees in its calculations and split employees into two groups: those with four years or more in their positions and those with three years or less in their positions. These highlighted differences among colleges in calculating faculty salary were reflected throughout all four employee categories and were more pronounced in calculating salaries for positions not included in the MSACC annual salary survey.

[¶ 10] On June 25, 1998, the appellee community colleges (plaintiffs) filed a complaint for declaratory relief in district court against the Wyoming Community College Commission, the State Treasurer and State Auditor (hereinafter state defendants). The plaintiffs alleged that distributing the salary enhancement funds other than through the distribution formula was in contravention of Wyo. Stat. Ann. § 21–18–202(a)(xiv) (Lexis 1999). On July 15, 1998, the district court granted Eastern and Central Wyoming Colleges' motion to intervene. On August 11, 1998, the plaintiffs' motion for preliminary injunction was granted enjoining the state defendants from distributing the funds at issue. In July 1998, the state defendants and intervenors filed motions to dismiss alleging the court lacked subject matter jurisdiction over the claim as it was not a proper declaratory judgment action. The district court denied the motions to dismiss on December 2, 1998. On July 6, 1999, a hearing was held on all parties' motions and cross-motions for summary judgment. The district court's order of August 16, 1999, granted the plaintiffs' motion for summary judgment finding that the Commission's distribution of the salary enhancement funds violated the mandate contained within Wyo. Stat. Ann. § 21–18–202(a)(xiv). The court further ordered that the remaining balance of the disputed funds should be distributed in accordance with the distribution formula in place in April of 1998. The state defendants moved for a continuance of the preliminary injunction which was granted on August 16, 1999. This timely appeal followed.

## STANDARD OF REVIEW

■■■ [¶ 11] When this court reviews a grant of summary judgment entered in response to a petition for declaratory judgment, we invoke our usual standard for review of summary judgments. *Fontaine v. Board of County Comm'rs*, 4 P.3d 890, 892 (Wyo.2000); *Board of County Comm'rs v. Geringer*, 941 P.2d 742, 745 (Wyo.1997); *Kunard v. Enron Oil & Gas Co.*, 869 P.2d 132, 134 (Wyo.1994). The summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Fontaine*, 4 P.3d at 892; *Kirby v. NMC/Continue Care*, 993 P.2d 951, 952 (Wyo.1999); *Selby v. Conquistador Apartments, Ltd.*, 990 P.2d 491, 494 (Wyo. 1999); *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo.1999). In this instance, there is no contention that any genuine issue of material fact exists, and our concern is strictly with the application of the law. An issue of statutory interpretation presents a question of law. *Fontaine*, 4 P.3d at 894; *Butts v. Wyoming State Bd. of Architects*, 911 P.2d 1062, 1065 (Wyo.1996); *Parker Land & Cattle Co. v. Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993). We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record. *Hirschfield v. Board of County Comm'rs*, 944 P.2d 1139, 1141 (Wyo.1997).

### Availability of Declaratory Judgment

■■■ [¶ 12] Appellant Commission first contends that this court lacks subject matter jurisdiction because appellee colleges' claim is not properly brought under the Uniform Declaratory Judgments Act but is more accurately characterized as an untimely petition for review of final agency action. We have reiterated on many occasions that subject matter jurisdiction cannot be waived. *Hirschfield v. Board of County Comm'rs*, 944 P.2d at 1141 (citing *Cotton v. Brow*, 903 P.2d 530, 531 (Wyo.1995) and *Brunsvold v. State*, 864 P.2d 34, 36 (Wyo.1993)). "The first and fundamental question on every appeal is that of jurisdiction; this question cannot be waived; it is open for consideration by the

reviewing court whenever it is raised by any party, or it may be raised by the court of its own motion." *Hirschfield,* 944 P.2d at 1141 (quoting *Gookin v. State Farm Fire & Casualty Ins. Co.,* 826 P.2d 229, 232 (Wyo.1992)). This court can have no greater jurisdiction of the subject matter than the district court. Where the district court is without jurisdiction in an administrative appeal from an agency, this court must dismiss the appeal. *Sheridan Retirement Partners v. City of Sheridan,* 950 P.2d 554, 556 (Wyo.1997) (citing *Scanlon v. Schrinar,* 759 P.2d 1243, 1246 (Wyo.1988)).

[¶ 13] Wyoming's Uniform Declaratory Judgments Act [3] states that it is remedial and should be liberally construed and administered. Wyo. Stat. Ann. § 1–37–114 (LexisNexis 2001). "We do not interpret it in a narrow or technical sense, and there remains the prerequisite that the party seeking declaratory relief present the court with an actual controversy." *Hirschfield,* 944 P.2d at 1142 (citing *Rocky Mountain Oil & Gas Ass'n v. State,* 645 P.2d 1163, 1168 (Wyo. 1982)). This court determined in *Rocky Mountain Oil,* at 1168:

> Ordinarily, a declaratory judgment action is not a substitute for an appeal [from administrative decisions.] ... If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, it should be entertained.

The court's conclusion in *Rocky Mountain Oil* was based in multiple sources: the plain language of the act (Wyo. Stat. Ann. §§ 1–37–102 and –114); W.R.C.P. 57, which provides in pertinent part, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate;" as well as W.R.A.P. 12.12, which provides:

> The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, *in actions for a declaratory judgment based on agency action or inaction,* in actions seeking any common law writ to compel, review or restrain agency action *shall be available by independent action notwithstanding any petition for review.*

(Emphasis added.) The *Rocky Mountain Oil* court ultimately held: "In as much as a declaratory judgment act is available to appellees as an independent action, separate and apart from a petition for review, the time in which a petition for review must be filed is immaterial." *Id.* at 1169.

[¶ 14] Following our decision in *Rocky Mountain Oil,* as directed by the statute, we have continued to liberally construe the availability of an action for declaratory judgment to consider issues arising from agencies' interpretations of statutes. *See Campbell County Sch. Dist. v. Catchpole,* 6 P.3d 1275 (Wyo.2000); *Hirschfield v. Board of County Comm'rs,* 944 P.2d 1139 (Wyo.1997); *Board of Equalization v. Jackson Hole Ski Corp.,* 737 P.2d 350 (Wyo.) *modified on other grounds,* 745 P.2d 58 (Wyo.1987); *State v. Kraus,* 706 P.2d 1130 (Wyo.1985).

[¶ 15] In the instant case, the district court in accepting jurisdiction concluded that:

> Defendants have argued that the basis for WCCC's funding decision lies in Wyoming Statutes. Specifically, Defendant WCCC has directed the Court's attention to Wyoming Statute § 21–18–202(a)(vii) and (xiv) and § 21–18–205(c)(i). Plaintiffs contend that the interpretation of Wyoming Statutes § 21–18–202(a)(vii) requires the distribution of all funds through the funding formula.... The interpretation of these statutes is an issue appropriate for this Court, and appropriate for a declaratory judgment.

We agree. Resolution of the case before us necessarily requires more than incidental statutory interpretation and construction; therefore, an independent action for declara-

---

**3.** Wyo. Stat. Ann. § 1–37–102 (LexisNexis 2001) provides:

> Courts of record within their respective jurisdictions may declare rights, status and other legal relations whether or not further relief is or could be claimed. No proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the effect of a final judgment.

tory judgment was available to the plaintiffs below. Consequently, any failure to file a timely petition for review under W.A.P.A. is immaterial and neither deprived the lower court of subject matter jurisdiction nor this court of appellate jurisdiction.

### Statutes Governing Distribution of State Aid to Community Colleges

[¶ 16] We turn, therefore, to the statutes that are the focus of dispute. We review a district court's statutory interpretation on a *de novo* basis. *Campbell County Sch. Dist. v. Catchpole,* 6 P.3d 1275, 1285 (Wyo.2000); *Corkill v. Knowles,* 955 P.2d 438, 440 (Wyo.1998). In interpreting statutes, our primary consideration is to determine the legislature's intent. *Fontaine v. Board of County Comm'rs,* 4 P.3d 890, 894 (Wyo.2000); *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal, Inc. v. State Board of Equalization,* 813 P.2d 214, 219 (Wyo. 1991); *Phillips v. Duro–Last Roofing, Inc.,* 806 P.2d 834, 837 (Wyo.1991). When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. *Allied–Signal,* 813 P.2d at 219. Moreover, "[a]ll statutes must be construed *in pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and construed in harmony." *Fontaine,* 4 P.3d at 894 (citing *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d at 735).

[¶ 17] Therefore, in performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.,* 866 P.2d 768, 770 (Wyo.1994) (citing *Parker Land & Cattle Co. v. Game & Fish Comm'n,* 845 P.2d 1040, 1042–43 (Wyo.1993)). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle,* at 1043. Conversely,

a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. *Basin Electric Power Co-op. v. State Bd. of Control,* 578 P.2d 557, 561 (Wyo.1978). However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Allied–Signal,* 813 P.2d at 219.

[¶ 18] If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent. *Petroleum Inc. v. State ex rel. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo.1999) (citing *Parker Land & Cattle Co.,* 845 P.2d at 1044).

> [I]n ascertaining the legislative intent in enacting a statute ... the court ... must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.

*Parker Land & Cattle Co.* at 1044 (quoting *Carter v. Thompson Realty Co.,* 58 Wyo. 279, 131 P.2d 297, 299 (1942)). In addition, if a statute is ambiguous, we will give some deference to an interpretation by the agency charged with execution of the statute unless its interpretation is clearly erroneous. *Parker Land & Cattle Co.,* 845 P.2d at 1045; *Mowry v. State ex rel. Wyoming Retirement Bd.,* 866 P.2d 729, 731 (Wyo.1993). However, we are not bound by an agency's interpretation; the final construction of an ambiguous statute is a question for the court. *Parker Land & Cattle Co.,* at 1045.

[¶ 19] The district court determined that the Commission's action in distributing $1,385,176 of state aid other than through the distribution formula was a violation of Wyo. Stat. Ann. § 21–18–202(a)(xiv) (Lexis 1999) which it found mandates that all appropriated state assistance to community colleges be distributed through the Commission's distri-

bution formula established pursuant to the section. The subsection on which the district court relied is found under the title *"Power and duties of the commission"* and provides:

(a) The commission shall:

. . .

(xiv) On or before January 2, 1991, establish a formula for distribution of state assistance to community colleges which is approved by a majority of commission members and which provides that no institution solely as a consequence of its implementation, shall have its total budget reduced by more than two percent (2%) in any fiscal year from the preceding approved total budget[.]

[¶ 20] In response, the Commission and appellant community colleges contend that the Commission's action in distributing the $1,385,176 in salary enhancement funds outside the distribution formula is authorized by statutes that grant it discretion in the distribution of funds appropriated by the legislature. Moreover, they justify any departure from the formula as a good faith attempt to effectuate the legislative objective which formed the basis for the appropriation: that staff salaries at each community college reach 90% of the comparator groups. In particular, appellants point to Wyo. Stat. Ann. § 21–18–202(a)(vii), similarly found under the title, *"Powers and duties of the commission."* This subsection provides:

(a) The commission shall:

. . .

(vii) Administer the program of state support for the community college system including distribution of amounts authorized by the legislature. Budgets filed with the commission under W.S. 16–4–111 shall be open for public review.

[¶ 21] Appellants further rely upon Wyo. Stat. Ann. § 21–18–205 (Lexis 1999) entitled, *"Appropriation and distribution of state funds; restrictions; budget authority."* The statute in pertinent part provides:

(c) State funding for the assistance of community colleges shall be appropriated to the community college commission unless otherwise specified by law. Funds appropriated for each biennium shall be distributed as follows:

(i) Distribution shall be made by the commission to the community colleges at times and in amounts to be determined by the commission based upon the amount determined to be necessary to maintain services for the particular college[.]

 [¶ 22] This court's responsibility in interpreting the above statutes is to follow the rule that statutes *in pari materia* should be compared and harmonized, if possible, and, "if not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment." *Huber v. Thomas*, 45 Wyo. 440, 19 P.2d 1042, 1044 (Wyo.1933) (quoting *Burton v. Union Pacific Coal Co.*, 18 Wyo. 362, 107 P. 391, 397 (Wyo. 1910)).

[¶ 23] First, we find that the three statutory subsections are *in pari materia* because all concern the distribution of state assistance to the community colleges by the Commission. Clearly, the plain language of Wyo. Stat. Ann. §§ 21–18–202(a)(vii) and 21–18–205(c)(i) grant broad discretion to the Commission to distribute appropriated funds *at times and in amounts to be determined by the commission based upon the amount determined to be necessary to maintain services for the particular college.* These sections were enacted as part of "the Wyoming Community College Code of 1985," a comprehensive amendment responsible for creating the modern-day community college system. 1985 Wyo. Sess. Laws ch. 208, § 1. Were these the only applicable sections, we might agree with the Commission that so long as its actions in distributing state assistance to community colleges were not an abuse of discretion they would almost certainly be upheld. However, four years later, in 1989, the legislature enacted Wyo. Stat. Ann. § 21–18–202(a)(xiv). 1989 Wyo. Sess. Laws ch. 248, § 2. The plain language of this section states that the Commission *shall* "on or before January 2, 1991, establish a formula for distribution of state assistance to community colleges which is approved by a majority of commission members...." This court stated nearly 72 years ago: "It is a

familiar and elementary rule of statutory construction that if it is not possible to reconcile inconsistent statutes, the dates of their enactment will be consulted in determining the legislative meaning and effect given to the later one." *Marsh v. Aljoe*, 41 Wyo. 119, 282 P. 1055, 1057 (Wyo.1929). "[I]f the conflict cannot be reconciled so that the provisions can stand together, then the later provision will prevail over the prior one, and the prior law is considered amended by implication only to the extent of the conflict." *Johnson v. Safeway Stores, Inc.* 568 P.2d 908, 913 (Wyo.1977).

■ [¶ 24] Reading the applicable statutes *in pari materia*, we conclude that the Commission's discretion in distributing state assistance to Community Colleges is abrogated solely to the extent that the Commission must establish a formula for the distribution of state assistance that is approved by a majority of the Commission which ensures that no institution's budget is reduced by more than 2% of the preceding fiscal year's total budget.[4]

[¶ 25] Since the formula's implementation, this has consistently been the reading given to the statute by the Commission and the community colleges. The Commission generally allocates funds through its detailed formula pursuant to Wyo. Stat. Ann. § 21–18–202(a)(xiv) and distributes them at times and in amounts it determines pursuant to Wyo. Stat. Ann. § 21–18–205(c)(i). However, in 1998 the Commission faced a decision that is the true crux of this case. The Commission, with the cooperation of the community colleges, had approached the governor and the legislature with a specific budget request for a salary enhancement appropriation of $1,385,176 which would ensure that each college could reach the agreed-upon salary goal. The legislature's Joint Appropriation Committee, after much discussion, appropriated exactly that amount for salary enhancement funding. Unfortunately, in the final appropriation the funds were not separated or earmarked in any way but were rather included within the Commission's general appropriation. The Commission was then left with a difficult choice: distribute funds according to each college's requested need in order to effectuate the legislative salary enhancement objective, or distribute funds through the formula and most likely thwart the very purpose for which the funds were granted. The Commission ultimately determined that utilization of the distribution formula was inadequate to effectuate the legislative purpose behind the appropriation of the salary enhancement funds of $1,385,176. It then used the discretion granted to it as the agency charged with administering state support to community colleges to distribute the special purpose funds outside of the distribution formula.[5]

■ [¶ 26] Reading the statutes *in pari materia* under the specific facts of this case, where ample evidence exists in the record to support the undeniable conclusion that the legislature appropriated funds for a specific purpose, we believe Wyo. Stat. Ann. §§ 21–18–202(a)(vii) and 21–18–205(c)(i) give the Commission the discretion to determine that its general distribution formula is inadequate to effectuate the precise legislative purpose behind the particular appropriation. Thus,

---

4. By its plain language, the statute does not require the Commission implement the formula through rulemaking.

5. Following the onset of litigation in this case, the applicable statutes were amended. *See* 2000 Wyo. Sess. Laws ch. 33, § 1 & 2. The amended statute, Wyo. Stat. Ann. §§ 21–18–205(c) & (e), provides:

> (c) State funding for the assistance of community colleges shall be appropriated to the community college commission unless otherwise specified by law. Subject to the provisions of this section, funds appropriated for each biennium shall be distributed by the commission to community colleges in amounts determined by a funding allocation model adopted by rule of the commission. The commission may maintain a contingency reserve account utilizing any revenue derived under W.S. 9–4–601(b)(iv)(A) to be distributed as a component of the funding allocation model for specific use by the colleges for emergency repairs and preventive maintenance.
>
> . . .
>
> (e) The commission may request additional state funding to be designated as special purpose funding, accounted for and distributed separately from distributions under the funding allocation model. Funds appropriated pursuant to this subsection shall be distributed in amounts and at times determined by the commission.

the Commission could determine to distribute the $1,385,176 other than through the Commission's detailed general distribution formula and according to each college's individualized need.

[¶ 27] However, we believe the legislative intent behind the requirement of a distribution formula, i.e. to ensure equitable distribution of state assistance among the seven community colleges, necessarily maintains its validity even when the Commission exercises its discretion to distribute funds other than through the general distribution formula. *Webster's Ninth New Collegiate Dictionary* (1991) defines "formula" as "a prescribed or set form or method." *Id.* at 485. Indeed, the Commission itself recognized this responsibility when it stated in its budget narrative request for the biennium at issue that one of its objectives is "[t]o ensure the equitable distribution of, and accountability for, state aid dollars utilized in community college instructional and support programs." To even greater effect, the plain language of Wyo. Stat. Ann. § 21–18–202(a)(ix) mandates that *"the Commission __shall__ ... insure uniform accounting of full-time equivalency and __financial data__ of the community colleges."* (Emphasis added.) Consequently, the Commission violated Wyoming statute when it distributed the funds according to budget requests that were not generated by a uniform methodology thus insuring a uniform accounting of the community colleges' salary enhancement data. No two colleges calculated their need for salary enhancement in precisely the same manner. Striking disparities in requested funds are found among those colleges that averaged their own salaries and compared those salaries to the comparator groups, and those colleges which did not average salaries. It would appear to this court to be a fundamental tenet of the concept of "equitable distribution" that while individual need may vary, the method used to calculate that need may not.

### CONCLUSION

[¶ 28] We find that the district court erred in interpreting the governing statutes to require the Commission to distribute specially appropriated funds through its general distribution formula; however, we also find that the Commission's distribution of funds according to the community colleges' wildly varying budget request methods was a violation of Wyoming statute. We reverse and remand to the district court to enter an order that the Wyoming Community College Commission establish a uniform accounting method or "formula" which is approved by a majority of Commission members to determine each college's need for the salary enhancement funds and to then distribute the remaining funds pro-rata according to the uniformly calculated salary requests.

SPANGLER, District Judge, Retired, dissenting.

[¶ 29] Wyo. Stat. Ann. § 21–18–202(a)(xiv) requires the Community College Commission to distribute state assistance in accordance with a formula. The statutes are unambiguous. The amount in question here was not distributed in accordance with that formula. There is no legislative direction to the contrary, though the legislature easily could have provided otherwise. Therefore, I would affirm the decision of the trial judge that the funds must be distributed as required by the statute.