CAMPBELL COUNTY SCHOOL DISTRICT, State of Wyoming, and Lincoln County School District No. 1, State of Wyoming, Appellants (Plaintiffs),

v.

Judy CATCHPOLE, Superintendent of Public Instruction, State of Wyoming, in her official capacity; Cynthia Lummis, Wyoming State Treasurer, in her official capacity; and Max Maxfield, Wyoming State Auditor, in his official capacity, Appellees (Defendants).

No. 98–310.

Supreme Court of Wyoming.

June 23, 2000.

Representing Appellants: Ford T. Bussart of Bussart, West, Rossetti, Piaia & Tyler, P.C., Rock Springs, WY. Argument by Mr. Bussart.

Representing Appellees: Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Rowena L. Heckert, Senior Assistant Attorney General. Argument by Ms. Heckert.

Before LEHMAN, C.J., and THOMAS, MACY,* and GOLDEN, JJ., and VOIGT, D.J.

LEHMAN, Chief Justice.

Appellants Campbell County School District and Lincoln County School District No. 1 (Campbell and Lincoln 1, or the Districts) claim they are entitled to a rebate of excess recapture monies they paid to the Department of Education. Because we conclude the district court erred in its interpretation of the recapture statute, Wyo. Stat. Ann. § 21-13-102 (Michie 1997), we reverse its denial of the Districts' claim for declaratory relief.

## ISSUES

The Districts present the following issue for review:

Whether Appellees (Defendants) have unlawfully refused to rebate to Appellant School Districts (Plaintiffs) overpayments of "recapture" revenues paid by the Districts to the State of Wyoming for the following fiscal years:

Campbell County School District-
Fiscal Years 1994, 1995, and 1996
Lincoln County School District Number One-
Fiscal Years 1995 and 1996

## FACTS

Appellant Districts are "recapture districts" as defined by Wyoming's public education finance statutes, specifically Wyo. Stat. Ann. § 21-13-102. That is, they are school districts in which locally generated revenue exceeds 109% of the amount to which each district is entitled for operation during a

* Retired June 2, 2000.

fiscal year under the Wyoming public education foundation program, Wyo. Stat. Ann. § 21–13–301 through 317.[1] Under the version of Wyo. Stat. Ann. § 21–13–102(b) in effect at all times relevant to this case, recapture districts were required to rebate to the Department of Education (the Department) the amount by which locally generated revenue exceeded 109% of foundation program costs.[2] The amount rebated by these districts is thus "recaptured" by the Department and credited to the public school foundation program account.

Pursuant to subsection (e) of Wyo. Stat. Ann. § 21–13–102, the amount to be rebated to the Department by recapture districts for a particular year is initially determined by estimates, based upon data from the preceding school year, computed by the Department in August of each fiscal year.[3] The August estimates are superseded later in the fiscal year by recapture amounts certified by the Department to the districts no later than March 1. Wyo. Stat. Ann. § 21–13–102(e). Under subsection (b) of the statute, recapture districts are required to pay recapture in installments on January 15, March 15, and April 15, with the balance to be paid on June 15.

The dispute in this case arose when the Districts, relying on Wyo. Stat. Ann. § 21–13–102(c), sought a refund of amounts of recapture they claim to have overpaid.[4] The Districts claimed to have rebated more to the Department than the amount by which actual revenues exceeded 109% of foundation program costs in the following years and amounts:

| | Campbell Cty. Sch. Dist. | Lincoln Cty. Sch. Dist. No. 1 |
|---|---|---|
| FY 1993/94 | $162,332 | |
| FY 1994/95 | $342,493 | $299,483 |
| FY 1995/96 | $435,419 | $176,999 |

These alleged discrepancies exist because recapture estimates are based on assessed values, and the counties were either unable to collect all that was assessed or were required to refund some amounts.

Based on these figures, in May of 1995, Campbell sent a letter to the Department requesting recalculation and recertification of the amount of recapture due for fiscal years 1993/94 and 1994/95. By letter dated June 12, 1995, the Department refused Campbell's request, stating that "[t]he current law simply grants us no authority to recalculate and recertify the amount of recapture due." The Department further stated in its letter: "In accordance with W.S. 21–13–102(b) and (e), the final amount of recapture must be certified to the districts no later than March 1 of each year."

Following the Department's refusal to recalculate the amount of Campbell's recapture, the Districts began to file claims with the state auditor. In May of 1996, Lincoln 1 filed a claim with the state auditor, pursuant to Wyo. Stat. Ann. § 9–1–404, for repayment of the excess recapture it paid for fiscal year 1994/95. Two days later, on May 24, Campbell filed a similar claim with the state auditor for repayment of the excess amounts it paid for 1993/94 and 1994/95. These claims were denied by the state auditor on July 15, 1996. A month later, Campbell and Lincoln 1 filed claims with the auditor for repayment of the excess payments made for fiscal year 1995/96. Nothing in the record indicates the state auditor ever responded to these claims.

1. For a sketch of the general contours of the school finance system, see *Campbell County Sch. Dist. v. State*, 907 P.2d 1238, 1248–50 (Wyo. 1995).

2. The version of Wyo. Stat. Ann. § 21–13–102(b) at issue in this case requiring recapture districts to rebate the amount by which revenues exceeded 109% of costs was declared unconstitutional in *Campbell County Sch. Dist. v. State*, 907 P.2d 1238, 1267–69 (Wyo.1995). The legislature has since amended this subsection, deleting the 109% figure effective July 1, 1998. Later in this opinion, we will discuss the effect of our 1995 holding on the Districts' present claim.

3. The fiscal year for school districts in the state begins July 1 and ends the following June 30. Wyo. Stat. Ann. § 21–3–112.

4. Wyo. Stat. Ann. § 21–13–102(c) (Michie 1997) provides in pertinent part:

> (c) * * * If any district rebated more revenue to the state during the preceding fiscal year than the maximum computed, or than the amount to be rebated under subsection (b) of this section as computed using actual data from the preceding fiscal year, the department shall rebate the excess to the district.

On November 21, 1996, Campbell and Lincoln 1 filed a complaint for declaratory relief in district court against the state superintendent of public instruction, the state treasurer and the state auditor (hereinafter the state defendants or State) alleging overpayment of recapture in amounts totaling $940,244 and $476,437 respectively. The Districts asked the court to enter an order declaring the purpose of, and duties of the Department under, Wyo. Stat. Ann. § 21–13–102(c). They also asked the court to direct payment to the Districts of the amounts in question.

On December 17, 1996, the state defendants filed an answer in which they claimed the court lacked jurisdiction because the recapture statute at issue was declared unconstitutional in *Campbell County Sch. Dist. v. State*, 907 P.2d 1238, 1267–69 (1995). The state defendants also raised numerous affirmative defenses, including failure to state a claim; judicial, collateral and equitable estoppel; res judicata; failure to exhaust administrative remedies; waiver; and laches. On July 20, 1998, a trial to the bench on stipulated facts was held in district court.

Following trial, the district court issued a decision letter ruling the Department's interpretation of Wyo. Stat. Ann. § 21–13–102(c) should be given effect. Under that interpretation, final recapture amounts would be based on assessed valuations, without regard for revenue actually received by the school districts. Although referring to the Department's interpretation as "strained," the court concluded the agency interpretation of the statute is entitled to deference. A judgment was later filed referencing the decision letter and denying the Districts' claim for declaratory relief. This timely appeal followed.

## DISCUSSION

■ Before addressing what we view as the real issue in this case, that is, the meaning of Wyo. Stat. Ann. § 21–13–102(c), we will address whether the Districts' claim is precluded for any of the reasons advanced by the State. Because the State has not filed a cross-appeal, the Districts argue the State should not be permitted to assert these issues. We disagree. We have written:

The rules are well settled concerning matters which an appellee properly may raise in response to an appeal taken by the adverse party. An appellee need not cross-appeal to assert an alternative theory, offered to and rejected by the district court, which would support the district court's ultimate disposition of the case. *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.*, Wyo., 602 P.2d 1219 (1979). Conversely, to attack the effect of the judgment, an appellee must perfect a cross-appeal to this court. *Wyoming State Treasurer v. City of Casper*, Wyo., 551 P.2d 687 (1976). We said in *Wyoming State Treasurer*, 551 P.2d at 693:

> "The controlling rule has been settled for many years. In *United States v. American Railway Express Co.*, 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087, 1093, it was said:
>
>> " '. . . [A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. . . .'
>
> "In summary, a non-appealing party may not attack the ultimate effect of the judgment below but may support it by any matter appearing in the record. The rejection of a contention, argument or theory in support of a claim does not reject the final upholding of the claim itself."

*Broyles v. Broyles*, 711 P.2d 1119, 1123 (Wyo. 1985). *See also Dechert v. Christopulos*, 604 P.2d 1039, 1046 (Wyo.1980). Here, the preclusive doctrines advanced by the State would serve to uphold the district court's ultimate disposition of the case and are properly before us despite the lack of a cross-appeal. Our decision of these issues is further assisted because, although it did not

address these issues in its decision letter, the district court heard extensive argument by the State on these issues at the trial on stipulated facts.

### Estoppel

█ The State advances the theories of res judicata, collateral estoppel, and judicial estoppel to support its contention that our decision in *Campbell County Sch. Dist. v. State,* 907 P.2d 1238 (Wyo.1995) precludes the present action. In essence, the argument is that a party cannot seek enforcement of an unconstitutional statute.

In *Campbell County Sch. Dist. v. State,* we held the recapture statute unconstitutional because we found that the statutory percentage (109%) of the foundation guarantee recapture districts were allowed to retain was arbitrary and not the result of any formula or calculation as required by our earlier school finance decision, *Washakie County Sch. Dist. No. One v. Herschler,* 606 P.2d 310 (Wyo.1980). *Campbell County Sch. Dist. v. State,* 907 P.2d at 1267–69. In our conclusion to the *Campbell County* case, we stated:

> Nothing in this decision shall be construed to interfere with, impair, or adversely affect existing bond obligations of the various school districts throughout the state. We realize the legislature must be afforded ample time for adequate study, drafting of appropriate reform legislation, and debate on and passage of that legislation. Consequently, as we did in *Washakie,* we shall provide a reasonable period for the legislature to achieve constitutional compliance.

*Campbell,* 907 P.2d at 1280. In our order denying rehearing of the case, we emphasized:

> The opinion and decision of the court was implicit in its language that it was prospective in operation and not intended to disturb present statutory provisions for financing of school operations, including bonded indebtedness.

*Campbell,* 907 P.2d at 1281. Consistent with the prospective nature of the opinion, we further ordered that

> the school finance system of the state of Wyoming continue under existing statutes,

and the validity and enforceability of past and future acts, bonded indebtedness and obligations incurred under applicable statutes, as long as they remain in force and effect, are assured.

*Id.* Given the prospective nature of our holding in *Campbell,* and the clear language leaving the statutes in effect until the enactment of replacement legislation, we reject the State's contention that the Districts' claim for declaratory relief is precluded by our holding in *Campbell.*

### Failure to File Timely Claim with Auditor

█ Relying on Wyo. Stat. Ann. § 9–1–404 (Michie 1997), the State argues Campbell County's claim for the 1993–94 fiscal year is barred because it failed to file a claim with the State Auditor in a timely fashion. That statute provides:

> **§ 9–1–404. Specified claims against state to be presented within one year.**
>
> Except as provided by W.S. 1–39–101 through 1–39–120, persons having claims against the state shall document the claim and submit it to the state auditor within one (1) year after the claim accrues, to be audited, settled and acted upon.

█ Prior to the advent of the Wyoming Governmental Claims Act (Wyo. Stat. Ann. § 1–39–101 *et seq.*), this court had several opportunities to interpret § 9–1–404 and its predecessors. In those cases, it was determined that a plaintiff's claim with the auditing officer is a condition precedent to suit that cannot be waived. *Rissler & McMurry Co. · v. Wyoming Highway Dep't,* 582 P.2d 583, 584 (Wyo.1978); *Wyoming State Highway Dep't v. Napolitano,* 578 P.2d 1342, 1345 (Wyo.1978); *Awe v. University of Wyoming,* 534 P.2d 97, 100 (Wyo.1975); *Price v. State Highway Comm'n,* 62 Wyo. 385, 396, 167 P.2d 309, 312 (Wyo.1946); *Utah Constr. Co. v. State Highway Comm'n,* 45 Wyo. 403, 422–25, 19 P.2d 951, 954–55 (1933). Such a condition precedent is jurisdictional in nature. *Board of Trustees of University of Wyoming v. Bell,* 662 P.2d 410, 414 (Wyo.1983); *Utah Constr. Co. v. State Highway Comm'n,* 45 Wyo. at 422–25, 19 P.2d at 954–55.

Despite numerous cases interpreting § 9–1–404, this court has never decided whether a notice of claim is required in cases between government agencies. We have, however, determined when the time to file such a notice of claim commences:

> If it were to be determined that a notice of claim is required in intergovernmental relationships, which decision is not presently made, we would discern that the time commences when the authorizing agency computes and advises whatever sum will be paid or withheld and why.

*Simons v. Laramie County Sch. Dist. No. One*, 741 P.2d 1116, 1121 (Wyo.1987).

Because we will conclude that Campbell's claim was timely, we again need not decide whether a notice of claim is required in intergovernmental suits that do not fall within the parameters of the Wyoming Governmental Claims Act. In May of 1995, Campbell sent a letter to the Department requesting recalculation and recertification of the amount of recapture due from the District for fiscal years 1993/94 and 1994/95. By letter dated June 12, 1995, the Department refused Campbell's request, stating that "[t]he current law simply grants us no authority to recalculate and recertify the amount of recapture due." The State contends Campbell's claim for the 1993/94 fiscal year accrued on July 15, 1994, the date on or before which the Department of Education is required to compute maximum and final recapture. Wyo. Stat. Ann. § 21–13–102(c). However, while that subsection requires computation by July 15, there is nothing in that subsection or elsewhere indicating who must be notified of the results of the Department's computation, or the date any notification must be accomplished. Moreover, there is nothing in the record indicating Campbell County, prior to the Department's letter of June 12, 1995, had notice of the Department's refusal to recalculate and recertify recapture. Therefore, under *Simons*, Campbell's claim for the 1993/94 fiscal year accrued, at the earliest, on June 12, 1995, the date of the Department's letter. Campbell filed its claim with the auditor within one year of that date, on May 24, 1996, thus making its claim timely.

As for subsequent fiscal years, we will also conclude those claims were timely. We agree with the State's contention these later claims arose each July 15 because, after the Department's letter of June 12, 1995, the Department successfully provided notice that it would not perform any computations pursuant to § 21–13–102(c). Given these circumstances, we conclude that any claims for fiscal years following the department's letter of June 12, 1995, would accrue on the July 15 following the particular fiscal year. Applying the foregoing, claims for all fiscal years at issue were filed in a timely fashion under § 9–1–404.

### Failure to Exhaust Administrative Remedies

 The State next claims the Districts have failed to exhaust administrative remedies, arguing the Districts were required to request certification of the auditor's findings. We disagree. The relevant statute, Wyo. Stat. Ann. § 9–1–407 (Lexis 1999), provides in pertinent part:

> (a) At the request of a person who is dissatisfied with the decision of the auditor on any claim, account or credit except as provided by W.S. 1–39–101 through 1–39–120, the auditor shall certify his findings and decision.

First, nothing in § 9–1–407(a) requires the Districts to request certification of findings, and we would be hard pressed to find a failure to exhaust for failing to request findings. In addition, we perceive the question to be whether the Districts exhausted their remedies with the administrative agency, the Department of Education, not with the auditor. We can find no failure to exhaust based on the State's contention.

### Availability of Declaratory Judgment

 The State further asserts the Districts' claim is precluded because they failed to file timely petitions for review and a declaratory judgment action should not substitute therefor. We again disagree. In *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d 1163, 1166–69 (Wyo.1982), this court permitted a declaratory judgment action to go forward despite the absence of a timely

petition for review of administrative action. The basis for such a conclusion was found in the Uniform Declaratory Judgment Act, specifically Wyo. Stat. Ann. § 1–37–102 and –114 (Lexis 1999),[5] and in W.R.A.P. 12.12, which provides:

The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, *in actions for a declaratory judgment based on agency action or inaction*, in actions seeking any common law writ to compel, review or restrain agency action *shall be available by independent action notwithstanding any petition for review.*

(Emphasis supplied.)

 The *Rocky Mountain Oil and Gas* court wrote:

Ordinarily, a declaratory judgment action is not a substitute for an appeal. *School Districts Nos. 2, 3, 6, 9, and 10, Campbell County v. Cook*, Wyo., 424 P.2d 751 (1967); *Stahl v. Wilson*, Fla.App., 121 So.2d 662 (1960); *Sparks v. Brock & Blevins, Inc.*, 274 Ala. 147, 145 So.2d 844 (1962); and *Bryarly v. State*, 232 Ind. 47, 111 N.E.2d 277 (1953). But such direct action is often available "even though there was a statutory method of appeal," *School Districts Nos. 2, 3, 6, 9 and 10, Campbell County v. Cook*, supra, 424 P.2d at 755. . . .

However, there is a restriction on the availability of a declaratory judgment action with reference to its applicability to administrative matters. Where the action would result in a prejudging of issues that should be decided in the first instance by an administrative body, it should not lie. This is because, if it be otherwise, all decisions by the several agencies could be bypassed, and the district court would be administering the activities of the executive branch of the government. *Public Service Commission of Utah v. Wycoff Co.,*

344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); and *City of Cheyenne v. Sims,* Wyo., 521 P.2d 1347 (1974). This restriction on the scope of declaratory judgments is akin to the requirement that administrative remedies must be exhausted before judicial relief is available.

Accordingly, where the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created, the action should not be entertained. *If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained.* This is no more than that obviously and plainly provided for in the language of the Uniform Declaratory Judgments Act.

*Rocky Mountain Oil and Gas Ass'n v. State,* 645 P.2d at 1168–69 (emphasis supplied). The court further concluded:

Inasmuch as a declaratory judgment action is available to appellees as an independent action, separate and apart from a petition for review, the time in which a petition for review must be filed is immaterial.

*Id.* at 1169.

 Applying the principles found in *Rocky Mountain Oil and Gas Ass'n v. State,* 645 P.2d at 1168, we will conclude that a declaratory judgment action is permissible under the circumstances of this case. The Districts are challenging the Department's interpretation of its governing statutes, specifically the Department's assertions that "[t]he current law simply grants us no authority to recalculate and recertify the amount of recapture due" and "[i]n accor-

---

5. Those statutes provide:

§ 1–37–102. Scope and general consideration.

Courts of record within their respective jurisdictions may declare rights, status and other legal relations whether or not further relief is or could be claimed. No proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The decla-

ration may be either affirmative or negative in form and effect, and such declarations shall have the effect of a final judgment.

§ 1–37–114. Construction of chapter.

The Uniform Declaratory Judgments Act is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to legal relations, and is to be liberally construed and administered.

dance with W.S. 21–13–102(b) and (e), the final amount of recapture must be certified to the districts no later than March 1 of each year." As such, this declaratory judgment action presents matters of statutory interpretation which are clearly permitted to be brought via a declaratory judgment action. *State v. Kraus*, 706 P.2d 1130, 1133 (Wyo. 1985); *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d at 1168; *State Bd. of Equalization v. Jackson Hole Ski Corp.*, 737 P.2d 350, 354 (Wyo.1987), modified on other grounds, 745 P.2d 58 (Wyo.1987); *see also Hirschfield v. Board of County Comm'rs of County of Teton*, 944 P.2d 1139, 1142 (Wyo. 1997) (proper to challenge Board's application of a rule of parliamentary procedure via declaratory judgment action); *Goedert ex rel. Wolfe v. State ex rel. Workers' Safety and Compensation Div.*, 991 P.2d 1225, 1228 (Wyo.1999). Along the same lines, because the Districts' claim concerns the interpretation of a statute upon which the administrative action is, or is to be, based, there is no "substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created." *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d at 1168; *cf. City of Cheyenne v. Sims*, 521 P.2d 1347, 1348–49 (Wyo.1974) (question of tax exemption, because it depends on use of property, is a question of fact reserved to administrative body); *Sheridan Retirement Partners v. City of Sheridan*, 950 P.2d 554, 557 (Wyo. 1997) (classification of project as multiple unit dwelling under the municipal code is "unquestionably agency function"). On the strength of the foregoing, we conclude the Districts' declaratory judgment action is permissible.

### Laches and Waiver

The State also advances the doctrines of laches and waiver. In an interesting twist on laches, the State argues the Districts' failure to challenge the Department's interpretation of § 21–13–102 for the years 1984 through 1990 amounts to an unreasonable delay. Relying on the same circumstances, the State argues the Districts' have also waived their claims.

"The defense of laches 'is a form of equitable estoppel based on a[n] unreasonable delay by a party in asserting a right.'" *Goshen Irr. Dist. v. State Bd. of Control*, 926 P.2d 943, 949 (Wyo.1996) (quoting *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1297 (Wyo.1991)). "Laches does not depend on the passage of time alone; the plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." *Id.* In addition, unless the delay has worked an injustice, prejudice or disadvantage to the defendant, it is not of itself laches. *Miller v. Stovall*, 717 P.2d 798, 807 (Wyo.1986); *Murphy v. Stevens*, 645 P.2d 82, 91 (Wyo.1982); *Hartnett v. Jones*, 629 P.2d 1357, 1364 (Wyo.1981).

The State's reliance on laches is misplaced. We have written that "[g]overnments and their agencies are generally not barred by laches when enforcing a public or governmental right." *Big Piney Oil & Gas Co. v. Wyoming Oil and Gas Conservation Comm'n*, 715 P.2d 557, 561 (Wyo.1986). In addition, we find little evidence of injustice, prejudice, or disadvantage to the defendants. We conclude laches does not preclude the present action.

We likewise reject the State's waiver claim because there is no indication that the Districts waived their claims for the fiscal years in question. We can find no "intentional relinquishment of a known right ... manifest[ed] in some unequivocal manner." *In re Wright*, 983 P.2d 1227, 1231 (Wyo.1999). The State's contention is more akin to an equitable estoppel. However, "[e]quitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances...." *Big Piney Oil & Gas Co. v. Wyoming Oil and Gas Conservation Comm'n*, 715 P.2d at 560; *State Highway Comm'n v. Sheridan–Johnson Rural Electrification Ass'n*, 784 P.2d 588, 592 (Wyo.1989). We find no such circumstances here.

### Recapture Statute

We turn, therefore, to the statute which is the focus of this dispute. We review

a district court's statutory interpretation on a *de novo* basis. *Corkill v. Knowles*, 955 P.2d 438, 440 (Wyo.1998). In performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994), citing *Parker Land & Cattle Co. v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo.1993). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. *Basin Electric Power Coop. v. State Bd. of Control*, 578 P.2d 557, 561 (Wyo. 1978). However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id.*

 If a statute is ambiguous, we will give some deference to an interpretation by the agency charged with execution of the statute unless its interpretation is clearly erroneous. *Parker Land and Cattle Co.*, 845 P.2d at 1045; *Mowry v. State ex rel. Wyoming Retirement Bd.*, 866 P.2d 729, 731 (Wyo.1993). Even then, however, we are not bound by an agency's interpretation; the final construction of an ambiguous statute is a question for the court. *Parker Land and Cattle Co.*, at 1045.

 When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Tietema v. State*, 926 P.2d 952, 954 (Wyo.1996); *Butts v. State Board of Architects*, 911 P.2d 1062, 1065 (Wyo.1996). Instead, our inquiry revolves around the ordinary and obvious meaning of the words employed according to their arrangement and connection. In doing so, we view the statute as a whole in order to ascertain its intent and general purpose and also the meaning of each part. "We give effect to every word, clause and sentence and construe all components of a statute in pari materia." *Parker*, 845 P.2d at 1042.

Wyo. Stat. Ann. § 21–13–102(c) provides:

(c) The revenue to be rebated under subsection (b) of this section shall not exceed seventy-five percent (75%) of the difference between the revenue received by a school district from the mandatory levies per average daily membership provided by subsection (a) of this section and the statewide revenue per average daily membership from twenty-five (25) mills, multiplied by the average daily membership of the school district. Annually, on or before July 15, the department using average daily memberships and assessed valuations from the preceding fiscal year, shall compute maximum recapture under this subsection for each district and the final amount of recapture computed under subsection (b) of this section for the preceding fiscal year. If any district rebated more revenue to the state during the preceding fiscal year than the maximum computed, or than the amount to be rebated under subsection (b) of this section as computed using actual data from the preceding fiscal year, the department shall rebate the excess to the district. If any district rebated less revenue to the state during the preceding fiscal year than the amount to be rebated under subsection (b) of this section, as computed using actual data from the preceding fiscal year, the district shall rebate the difference to the state.

In its initial response to the Districts' request for recalculation, the Department claimed it had no authority to recalculate the amount of recapture after the March 1 calculation required by subsection (e); the March 1 calculation, according to the Department in its June 12, 1995 letter, is the final calculation authorized by Wyo. Stat. Ann. § 21–13–102.

In its brief to this court, the State concedes that subsection (c) requires the Department to recalculate recapture by July 15 (after the March 1 calculation). Indeed, pursuant to the second sentence of that subsection, it is clear the Department, on or before

July 15, is required to make two computations, maximum recapture and final recapture. It is also clear both computations are to be made using average daily memberships and assessed valuations from the preceding fiscal year.

The third sentence of subsection (c), the subject of this dispute, provides the school districts an opportunity to recoup amounts they over-rebated to the Department. There are two methods by which a district can achieve such a rebate. The first method, not a subject of this appeal, comes into play if a district rebated more revenue to the State than the maximum computed under the first sentence of subsection (c). The second method, the focus of this dispute, entitles a district to receive a rebate if it "rebated more revenue to the state during the preceding fiscal year than ... the amount to be rebated under subsection (b) of this section as computed using *actual data* from the preceding fiscal year...." (Emphasis supplied.)

■ The question thus becomes what the legislature meant when it premised a rebate to the recapture districts based on "actual data." The State argues the legislature intended that actual data means average daily memberships and assessed valuations, the basis for the July 15 computation of final recapture. Its contention is essentially that actual data is a shorthand reference to "average daily memberships and assessed valuations" found in the preceding sentence. For their part, the Districts argue that actual data contemplates revenue actually received regardless of the amounts assessed. When subsections (b) and (c) of § 21–13–102 are read together, we agree with the Districts that actual data contemplates actual revenue.

In order to interpret the meaning of actual data, we first note that subsection (c) refers back to subsection (b): "If any district rebated more revenue to the state during the preceding fiscal year ... *than the amount to be rebated under subsection (b) of this section as computed using actual data from the preceding fiscal year*, the department shall rebate the excess to the district." (Emphasis added.) The court must, therefore, refer to subsection (b) where the legislature mandated recapture districts to rebate

"the amount by which the revenue from the sources provided by W.S. 21–13–310 exceeds one hundred nine percent (109%) of foundation program costs...." Subsection (b) thus sets forth the formula for determining recapture—the amount by which revenue from local resources (as identified in Wyo. Stat. Ann. § 21–13–310) exceeds 109% of foundation program costs (as identified in Wyo. Stat. Ann. § 21–13–309). The second clause of the third sentence of subsection (c) clearly refers back to the formula set forth in subsection (b) and contemplates the use of actual data from the preceding fiscal year, that is, the amount by which actual revenue exceeded 109% of foundation program costs based on actual average daily memberships, in determining whether a district paid too much and is entitled to a rebate. As such, this section serves to reconcile the earlier estimates with actual data.

Contrary to this interpretation, the Department's interpretation would equate revenue to assessed valuations. However, one need look no further than this case to see that assessed valuations do not always result in identical amounts of revenue. Given this reality, had the legislature intended the statute be interpreted in this manner, it would have used the term assessed valuations in subsection (b) rather than revenue. In addition, had the legislature intended that actual data means "average daily memberships and assessed valuations," it surely could have used that more specific language in the third sentence of subsection (c) rather than resorting to shorthand. When subsections (b) and (c) are read together, we agree with the Districts that actual data means actual revenue received by the Districts regardless of the amounts that have been assessed.

Because we find the language of subsection (c) to be sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words, and we resort neither to the rules of statutory construction nor to the rule of deference to agency interpretation. Thus, we conclude the district court erred in deferring to the Department's interpretation.

Having determined that the governing statute requires the Department to rebate excess recapture monies to the Districts, we must also determine by what mechanism, if any, the courts may compute and direct payment of the monies at issue. We have held that a school district may not sue the Wyoming State Hospital in tort because such a suit amounted to the State suing itself. *Carbon County Sch. Dist. No. 2 v. Wyoming State Hosp.*, 680 P.2d 773, 775 (Wyo.1984). However, we qualified that holding by stating that principle does not apply to actions to construe statutes and to determine correlative rights between state agencies and entities. *Id.*

We will apply these principles here. We have declared that the Districts are entitled to a refund of sums overpaid. However, we will draw a parallel with the concept of a recovery in tort with a recovery of money owed from one arm of the state to another arm of the state, in an instance such as that presented here. *See Board of County Comm'rs of County of Laramie v. Laramie County Sch. Dist. Number One*, 884 P.2d 946, 951 (Wyo.1994) ("the action here is not for compensatory damages, but rather for an action seeking a declaration of rights and obligations and a claim for monies belonging to the School District which were wrongfully diverted"). From the Districts' brief in this court, there appears to remain some question regarding the sums of money at issue. However, the courts will decline to calculate and assess sums due and owing, because to do so would be tantamount to a violation of the principle that the State cannot sue itself. To the extent the sums due and owing are agreed upon, those sums must be computed by the Department based on information supplied by the Districts under the governing statute. If the parties are unable to resolve the matter of what sums are due and owing, that is a matter which must be resolved within the structure of the executive branch of government without resort to an action in court to recover money. If the Districts disagree with a decision of the Department on these matters, it may seek review in accordance with the Wyoming Administrative Procedure Act. Wyo. Stat. Ann. § 21–2–202(d).

## CONCLUSION

The district court erred in applying the rule of deference to the Department's interpretation of Wyo. Stat. Ann. § 21–13–102(c), which, in clear and plain language, requires that, if any district rebated more revenue than the difference between actual revenue and 109% of foundation program costs based upon actual data, the Department shall rebate the excess to the district. We, therefore, reverse the judgment denying the Districts' claim for declaratory relief and remand to the district court for proceedings consistent with this opinion.